The STATE of Ohio, Appellee,

v.

MANN, Appellant.

[Cite as *State v. Mann* (1993), 93 Ohio App.3d 301.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 63903.

Decided Nov. 15, 1993.

302

304

*Stephanie Tubbs Jones*, Cuyahoga County Prosecuting Attorney, and *Karen L. Johnson*, Assistant County Prosecuting Attorney, for appellee.

*Hyman Friedman*, Cuyahoga County Public Defender, and *Margaret O. Isquick*, Assistant Public Defender, for appellant.

PATTON, Presiding Judge.

Defendant-appellant Anthony Mann ("appellant") appeals from his convictions of one count of possession of cocaine in an amount exceeding three times the bulk amount (R.C. 2925.03[A][6] ) with firearm and violence specifications, possession of criminal tools (R.C. 2923.24) with a violence specification, and one count of having a weapon while under a disability (R.C. 2923.13) with firearm and violence specifications. For the reasons adduced below, we affirm appellant's convictions.

The following facts gave rise to this appeal: On the day in question, October 4, 1991, members of the Cleveland Police Department Strike Force received complaints of drug trafficking in Apartment No. 10 at 1877 East 97th Street in the city of Cleveland. Specifically, Captain Anthony Iverson of Management Security, a security firm, testified that he phoned the Strike Force as part of his job duties of providing safe and secure premises for certain apartment complexes and relayed to Cleveland police the complaints received from the residents regarding Apartment No. 10. The residents complained of drug trafficking in the subject apartment. Captain Iverson also had information that, since the previous tenant was evicted, a squatter was occupying the premises and was believed to be selling drugs.

On the day in question, Captain Iverson was contacted by Detectives Charles Gibson and David Hancock in response to his call of complaints. Captain Iverson told the detectives of the residents' complaints regarding Apartment No. 10. In response, the detectives, and Patrolman Kevin Becker together with Captain Iverson, attempted to gain entry to Apartment No. 10, but the door was locked. With the assistance of the apartment building's maintenance man, Herman Yoder, they gained entry. The testimony established that Captain Iverson and the detectives heard the sound of running water in the shower and a man singing. Thereafter, the testimony of all four men reveals that, after entry in the subject apartment, they then saw a man, clad only in khaki-colored pants, barefoot and dripping wet, dash out through the back of the apartment after the police announced themselves.

Patrolman Becker began the chase of the man by following his wet footprints to a downstairs apartment, No. 8. When Patrolman Becker reached Apartment No. 8, the door was open and he could see a little boy crying on the kitchen floor. Patrolman Becker followed the wet footprints down the hallway to the back bedroom. Patrolman Becker discovered appellant in the back bedroom of Apartment No. 8 towel-drying his hair and wearing nothing but khaki-colored pants. Thereafter, Patrolman Becker took appellant into police custody and began walking him back to Apartment No. 10 when Pat Cunningham, lessee of Apartment No. 8, inquired as to the identity of appellant. Cunningham told Becker she had never seen appellant nor had she given him permission to enter her apartment.

Upon returning to Apartment No. 10, Patrolman Becker read appellant his *Miranda* rights. Apartment No. 10 was mostly empty except for a bed in the living room, a television set and a VCR. Found in the subject apartment were a cellular phone listed to one Johnathan Lee, worth approximately $1,800, and a pager; a gun containing live rounds, which had been test fired after seizure; a porcelain cup containing scissors; single-edged razor blades; glass beakers, all

later testing positive for cocaine residue; an open waist purse containing $1,115 in cash; and bags of crack cocaine (43.64 grams). Appellant requested his tennis shoes from the bathroom and told the officers they could keep the $1,115 they found if they forgot about the whole incident. The officers declined appellant's offer.

Also discovered on the scene was a handwritten letter addressed to one Peter Hood.

Pat Cunningham testified in behalf of the state. Cunningham stated that, on the day in question, she and her family members were at home in Apartment No. 8 when her son Ira told her that a man was at the back door demanding to use the bathroom. Cunningham ran to the kitchen and saw her other son on the floor crying and two police officers with their guns drawn. Cunningham identified the man in her apartment that day as appellant. Cunningham also stated that, when the police asked her on the scene if appellant lived in her apartment, appellant kept nodding his head up and down as if to coax Cunningham into responding in the affirmative.

Approximately two weeks prior to trial, Cunningham testified she received a telephone call from Peter Hood. It was a four-way call which included Cunningham's girlfriend Sharon, Hood and appellant. Cunningham stated that during this conversation, Hood offered her "some money."

Appellant testified in his own behalf. He stated he was paroled on June 8, 1990 for his 1983 convictions of six counts of rape, one count of attempted rape, one count of kidnapping, and one count of robbery.

Appellant testified that, on the day in question, his brother Gary dropped him off at a community center to play basketball. After the game, appellant met one Linda Owens and told her he was going to his sister's apartment to shower and change his clothes and that he would meet Owens later. Appellant then proceeded to his sister's apartment and when no one answered, he went to Peter Hood's apartment to shower. Appellant challenged the police officer's version of events as well as Cunningham's and Iverson's version. Appellant denied fleeing from police and denied demanding entry into Apartment No. 8. He further denied sharing Apartment No. 10 with Hood and one Johnathan Lee and using it as a crack house. He denied knowing Lee even though Lee had visited appellant several times while appellant was incarcerated, identifying himself as appellant's cousin.

Linda Owens and Gary Mann testified in behalf of the defense, corroborating appellant's testimony regarding the basketball game at the community center. However, no corroboration was offered regarding the events after the basketball game.

Appellant challenges his convictions in this timely appeal and assigns four errors for our review:

"I.   Appellant's right to due process of law as guaranteed by the United States and Ohio Constitutions was denied when he was convicted of violating R.C. 2925.02, R.C. 2923.24, R.C. 2923.13, and R.C. 2941.141 on evidence which was insufficient as a matter of law to support the conviction.

"II.   Anthony Mann's conviction of the firearm specification was against the weight of the evidence.

"III.   Anthony Mann was denied a fair and impartial trial as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution by the purposeful and continuous misconduct by the prosecutor.

"IV.   The trial court erred by denying Mr. Mann's motion to dismiss indictment pursuant to his statutory right to a speedy trial under R.C. 2945.71 and R.C. 2945.73, and his constitutional right to a speedy trial under the Sixth Amendment to the United States Constitution."

I

In appellant's first assigned error, he argues the evidence is insufficient to support his convictions.   Specifically, he contends the state presented insufficient evidence to prove beyond a reasonable doubt that appellant was in constructive possession of the items seized from Apartment No. 10.

A review of the entire record reveals that the state indeed met its burden of proof and presented sufficient evidence to support appellant's convictions for possession of cocaine, possession of criminal tools and having a weapon while under a disability.

When an appellate court reviews a conviction to determine whether it is supported by sufficient evidence, the court must "examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.   The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

Moreover, the Supreme Court noted that circumstantial evidence and direct evidence have the same probative value and should be subjected to the same standard of proof.   *Id.*, at paragraph one of the syllabus.   An appellate court will not reverse a conviction unless it appears that no rational trier of fact

could have found all the elements of the offense had been proven beyond a reasonable doubt.

R.C. 2925.03(A)(6) prohibits the knowing possession of a controlled substance "in an amount equal to or exceeding three times the minimum bulk amount."

R.C. 2923.24, which prohibits the crime of possession of criminal tools, states:

"(A) No person shall possess or have under his control any substance, device, instrument, or article, with purpose to use it criminally.

"(B) Each of the following constitute prima-facie evidence of criminal purpose:

"* * *

"(2) Possession or control of any substance, device, instrument, or article designed or specially adapted for criminal use * * *[.]"

R.C. 2925.01(L) defines "possession" to mean "having control over a thing or substance but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found."

Moreover, R.C. 2901.21(C), requirements for criminal liability, states as follows:

"(1) Possession is a voluntary act if the possessor knowingly procured or received the thing possessed, or was aware of his control thereof for a sufficient time to have ended possession."

■ Possession may be actual or constructive. *State v. Haynes* (1971), 25 Ohio St.2d 264, 54 O.O.2d 379, 267 N.E.2d 787; *State v. Bailey* (Apr. 20, 1987), Cuyahoga App. No. 51968, unreported, 1987 WL 9620. Since no drugs or weapons for which he was charged were found on appellant's person, the state must have proved appellant constructively possessed the contraband. *Id.*

■ A person has constructive possession of a thing or substance when he is able to exercise dominion or control over it. *State v. Wolery* (1976), 46 Ohio St.2d 316, 332, 75 O.O.2d 366, 375, 348 N.E.2d 351, 362. Ownership of the contraband need not be established. A person may indeed control or possess property belonging to another. The Supreme Court has held that knowledge of illegal goods on one's property is sufficient to show constructive possession. *State v. Hankerson* (1982), 70 Ohio St.2d 87, 91, 24 O.O.3d 155, 157, 434 N.E.2d 1362, 1365, certiorari denied (1982), 459 U.S. 870, 103 S.Ct. 155, 74 L.Ed.2d 130; *State v. Pearson* (Mar. 17, 1983), Cuyahoga App. No. 44550, unreported, 1983 WL 5860; *State v. Young* (Jan. 24, 1991), Cuyahoga App. No. 57952, unreported, 1991 WL 6451. We note that the above-stated law regarding possession is aptly articulated in 4 Ohio Jury Instructions (1993), Criminal, Section 409.50.

██ Where the defendant neither owns, leases nor occupies the premises, his mere presence in an apartment in which drugs and criminal tools are found is insufficient evidence of his possession of the contraband. *State v. Pruitt* (1984), 18 Ohio App.3d 50, 18 OBR 163, 480 N.E.2d 499; *State v. Moss* (May 10, 1990), Cuyahoga App. No. 56889, unreported. However, in this case, the record certainly suggests more than appellant's mere presence in the subject apartment and indeed draws this court to the conclusion that appellant occupied Apartment No. 10.

Appellant was discovered alone in what was supposed to have been a vacated Apartment No. 10—an apartment which was under investigation for drug trafficking. He was not a visitor. In fact, he was taking a shower there. Drugs, drug paraphernalia and relatively large amounts of money were found in the apartment in plain view. A review of the cellular phone records revealed that it was registered to one Johnathan Lee, appellant's cousin, and that it received numerous calls daily, even ringing twice while police officers were in Apartment No. 10. However, after appellant was arrested, the telephone calls ceased.

Appellant fled when the police arrived at the apartment. He fled to another apartment and forced his way into the bathroom, where he appeared to be toweling dry as if he lived there. Appellant also gestured to Cunningham to lie on his behalf that he lived at Apartment No. 8. Also, the record reflects that appellant offered the police officers the cash that was found in Apartment No. 10 if they would forget the whole incident. As spelled out in Ohio Jury Instructions, Section 409.50, a person has possession when he knows that he has the object on or about his person or where it is accessible to his use or direction and he has the ability to control or direct its use. In this case, appellant's behavior evidences that he was indeed aware of the presence of contraband, since he fled from Apartment No. 10 and lied thereafter. Also, the fact that appellant offered the money recovered to the police evidences that appellant could exercise dominion and control over the items seized. Therefore, sufficient evidence was indeed presented that appellant was in constructive possession of the items seized from Apartment No. 10.

██ We find sufficient evidence to support his conviction of possession of criminal tools. Because possession has been established, we proceed with the second element, *viz.*, purpose to use the devices in a criminal manner. See *State v. Oliver* (1987), 31 Ohio App.3d 100, 104, 31 OBR 171, 174, 508 N.E.2d 1048, 1052. The criminal tools in this case were the gun, cellular phone, pager and money.

The record reflects that drug sales were being conducted out of Apartment No. 10 and that appellant was in constructive possession of relatively large sums of money when he represented himself as being unemployed. Moreover, drugs and

drug paraphernalia commonly used in drug trafficking were discovered along with a pager and cellular phone. Taken together, there was sufficient evidence presented to allow the jury to make the inference that appellant was using these items in a criminal manner.

We likewise find sufficient evidence that appellant constructively possessed the firearm for purposes of his conviction of having a weapon while under a disability.

Accordingly, the first assignment of error is overruled.

## II

In appellant's second assigned error, he argues his conviction of the firearm specification in count one, possession of cocaine, is against the manifest weight of the evidence, since it was the same gun for which he was convicted in count three, possession of criminal tools. Appellant also argues the state did not prove the operability of the firearm. His contentions lack merit.

In *State v. Martin* (1983), 20 Ohio App.3d 172, 20 OBR 215, 485 N.E.2d 717, the court set forth the test to be utilized when addressing the issues of manifest weight of the evidence. The *Martin* court stated as follows:

"The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. * * * See *Tibbs v. Florida* (1982), 457 U.S. 31, 38, 42 [102 S.Ct. 2211, 2216, 2218, 72 L.Ed.2d 652, 659, 661]." *Martin, supra*, 20 Ohio App.3d at 175, 20 OBR at 219, 485 N.E.2d at 720; see, also, *State v. Davis* (1988), 38 Ohio St.3d 361, 365, 528 N.E.2d 925, 929.

Moreover, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus. This court will not reverse a verdict where there is substantial evidence upon which a trier of fact could reasonably conclude that all the elements of the offense have been proven beyond a reasonable doubt. *State v. Eley* (1978), 56 Ohio St.2d 169, 10 O.O.3d 340, 383 N.E.2d 132.

The trier of fact is entitled to believe or not to believe the testimony of the state's witnesses and/or the defense witnesses. *State v. Antill* (1964), 176 Ohio St. 61, 26 O.O.2d 366, 197 N.E.2d 548. The trier of fact should consider the demeanor of the witness and the manner in which he testifies, his connection or relationship with the parties, and his interest, if any, in the outcome. *Id.* at 67, 26 O.O.2d at 369, 197 N.E.2d at 553.

## A

First, appellant does not support his assertion that guilty verdicts on both the firearm specification in count one and the possession of criminal tools conviction in count three are somehow inconsistent and therefore against the manifest weight of the evidence. We find no merit to his bald assertion.

## B

"Firearm" is defined in R.C. 2923.11(B) as "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. 'Firearm' includes an unloaded firearm, and any firearm which is inoperable but which can readily be rendered operable." The state must prove beyond a reasonable doubt that the firearm was operable or could readily have been rendered operable at the time of the offense. *State v. Gaines* (1989), 46 Ohio St.3d 65, 545 N.E.2d 68, modified by *State v. Murphy* (1990), 49 Ohio St.3d 206, 208, 551 N.E.2d 932, 934. *Murphy* reaffirmed the holding in *Gaines* but modified it as to the type of evidence which is required to prove this specification beyond a reasonable doubt.

Operability may be inferred from the totality of the circumstances and may be established by the testimony of lay witnesses. *Murphy, supra*, 49 Ohio St.3d at 208–209, 551 N.E.2d at 934–935. Further, proving operability does not require the state to provide an empirical analysis or examination of the gun and such requirement would only frustrate the intent of the General Assembly to send a message to the criminal world regarding possession of a firearm. *Id.*

In this case, we find operability was proved beyond a reasonable doubt. Det. Hancock testified that, although the gun was broken at the time of trial, he indeed performed a field test of the gun and determined that the hammer and firing pin worked. Further, the testimony revealed the firearm contained live rounds when it was recovered. Appellant's insinuation that Det. Hancock lied regarding whether he conducted a field test fails, since the jury was entitled to believe or disbelieve any of the witnesses. See *Antill, supra*.

Accordingly, the second assignment of error is overruled.

## III

In appellant's third assigned error, he argues he was denied a fair trial due to prosecutorial misconduct. Specifically, he contends that (1) the prosecutor during cross-examination of Gary Mann and closing argument referred to matters outside the record; (2) the prosecutor characterized appellant as a liar during

cross-examination; and (3) the prosecutor insinuated defense counsel believed appellant to be guilty.

In *State v. Hill* (1977), 52 Ohio App.2d 393, 6 O.O.3d 436, 370 N.E.2d 775, the court set out four elements to be considered in determining whether the prosecutor's statements amount to misconduct: (1) the nature of the remarks; (2) whether an objection was made by opposing counsel; (3) whether corrective instructions were given; and (4) the strength of the evidence against the defendant. Another factor to be considered in determining whether remarks constitute misconduct is whether the remarks prejudicially affected substantial rights of the defendant. *State v. Smith* (1984), 14 Ohio St.3d 13, 14, 14 OBR 317, 318, 470 N.E.2d 883, 885.

First, and with an admission by appellant, many of defense counsel's objections to the prosecutor's remarks were sustained. Therefore, we need not consider these remarks. See *State v. Riley* (June 15, 1989), Cuyahoga App. No. 55514, unreported, 1989 WL 65670, citing *State v. Williams* (1974), 39 Ohio St.2d 20, 68 O.O.2d 12, 313 N.E.2d 859.

Second, the conduct of a prosecuting attorney during the course of trial cannot be raised as reversible error unless that conduct deprived the defendant of a fair trial. *State v. Vrona* (1988), 47 Ohio App.3d 145, 547 N.E.2d 1189; *State v. Papp* (1978), 64 Ohio App.2d 203, 18 O.O.3d 157, 412 N.E.2d 401. We fail to see how the comments of the prosecutor during cross-examination, and in light of the fact that most objections were sustained, deprived appellant of a fair trial, especially in light of the evidence of his guilt.

Appellant also contends that parts of the prosecutor's closing argument were so improper as to deny him a fair trial. The prosecution is normally entitled to a certain degree of latitude in closing arguments. *Smith, supra.* Moreover, closing arguments must be viewed in their entirety to determine whether remarks were prejudicial. *State v. Burgun* (1978), 56 Ohio St.2d 354, 10 O.O.3d 485, 384 N.E.2d 255.

A review of the prosecutor's entire closing argument discloses no prejudice to any substantial rights of the appellant. Further, we cannot say that the complained-of remarks, when viewed in light of the overwhelming evidence presented by the state, prejudiced the appellant.

IV

In appellant's fourth and supplemental assigned error, he contends he was denied his constitutional right to a speedy trial. Specifically, he argues the trial court erred in denying his motion to dismiss the indictment, since he was

entitled to the ninety-day triple-count provision of R.C. 2945.71(E). Appellant claimed that, although a parole holder existed during the pendency of the within criminal charges, it was not until after the trial that he was actually adjudicated a parole violator. Therefore, because there was no evidence of a valid parole holder while he was being held in jail, appellant's motion to dismiss the indictment for lack of a speedy trial should have been granted.

The statutory provisions guaranteeing an accused's right to be tried without inordinate delay are found in R.C. 2945.71 and 2945.73. R.C. 2945.71 states in part:

"(C) A person against whom a charge of felony is pending:

" * * *

"(2) Shall be brought to trial within two hundred seventy days after his arrest.

" * * *

"(E) For purposes of computing time under divisions (A), (B), (C)(2) and (D) of this section, each day during which the accused is held in jail in lieu of bail *on the pending charge* shall be counted as three days. * * * " (Emphasis added.)

"The existence of a valid parole holder prevents application of the triple-count provisions of R.C. 2945.71(E)." *State v. Brown* (1992), 64 Ohio St.3d 476, 479, 597 N.E.2d 97, 99; *State v. Cook* (1992), 65 Ohio St.3d 516, 518, 605 N.E.2d 70, 76; see, also, *State v. Martin* (1978), 56 Ohio St.2d 207, 10 O.O.3d 369, 383 N.E.2d 585. R.C. 2945.71(E) is applicable only to those defendants held in jail in lieu of bail *solely on the pending charge. Martin, supra,* citing *State v. MacDonald* (1976), 48 Ohio St.2d 66, 2 O.O.3d 219, 357 N.E.2d 40. A parole violation is a separate offense and does not relate to the pending charge as contemplated by R.C. 2945.71(E). *Id.*

" 'Thus, the triple-count provision of R.C. 2945.71(E) is inapplicable to a defendant held in jail under a parole holder, even when there are additional criminal charges pending. * * *' *State v. Dunkins* (1983), 10 Ohio App.3d 72, 74–75, 10 OBR 82, 85, 460 N.E.2d 688, 692. See, also, *State v. Martin* (1978), 56 Ohio St.2d 207, 211, 10 O.O.3d 369, 371, 383 N.E.2d 585, 587." *State v. Brown,* 64 Ohio St.3d at 479, 597 N.E.2d at 99.

While appellant urges reversal based upon this court's decision in *State v. Martin* (Nov. 19, 1992), Cuyahoga App. No. 61437, unreported, 1992 WL 354588, we are compelled to affirm his convictions based upon the reasoning and holding in *Brown.*

Appellant's argument essentially mirrors the defendant's argument in *Brown* that there was no evidence of the existence of a valid parole holder on him and, accordingly, there existed no basis for the trial court's denial of his motion to dismiss. This argument was rejected in *Brown* and we likewise reject it in the instant case. The Supreme Court of Ohio in *Brown* looked to the transcripts of the hearing on the motion to dismiss and pretrial conference to conclude there was a sufficient basis to establish the existence of a valid parole holder. Moreover, the *Brown* court found it significant that defense counsel did not dispute the existence of the parole holder.

In this case, the transcript reflects that defense counsel entered into a stipulation with the state that a parole holder existed in this case. Ergo, appellant's counsel, as in *Brown*, did not dispute the existence of the parole holder and in fact stipulated to it.

Appellant relies upon this court's holding in *Martin*, yet acknowledges the fact that *Martin* and *Brown* are completely inconsistent. In order to resolve the inconsistency, we note that the *Martin* case is an unpublished opinion of this court and therefore is not considered controlling authority in this judicial district. S.Ct.R.Rep.Op. 2(G)(1). Further, *Martin* is limited to the facts in that case and is only binding on the parties thereto. *Id.*

Nevertheless, we find *Brown* dispositive of this issue and further hold that the Supreme Court of Ohio's holding in *Brown* clearly overruled by implication this court's decision in *Martin*.

Accordingly, the fourth and supplemental assignment of error is overruled.

*Judgment affirmed.*

KRUPANSKY and NUGENT, JJ., concur.