[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION AND JUDGMENT ENTRY
This is an appeal from a judgment of conviction and sentence entered by the Sandusky County Court of Common Pleas after a jury found defendant-appellant, Diangelo Durr, guilty of one count of possession of drugs in violation of R.C. 2925.11(A) and one count of tampering with evidence in violation of R.C. 2921.12(A)(1). From that judgment, appellant now raises the following assignments of error:
 "I. THE TRIAL COURT VIOLATED CRIMINAL RULE 7(D) BY AMENDING THE AMOUNT OF COCAINE THE DEFENDANT POSSESSED THEREBY CHANGING THE NATURE OF THE CRIME CHARGED.
 "II. THE VERDICT RENDERED BY THE JURY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
The facts of this case, as testified to at the trial below, are as follows. On December 13, 1996, at approximately 1:25 a.m., Officer Robert Karr of the Fremont Police Department and Reserve Officer Scott Mezinger of the Sandusky County Sheriff's Office were patrolling Fremont, Ohio in uniform but in an unmarked cruiser. As they were driving northbound on North Front Street they noticed a man, who was later determined to be appellant, walking toward them in the middle of the road. They also noticed what appeared to be an accident up ahead. Appellant continued to walk toward the unmarked cruiser and Officer Karr, who was driving, had to stop the car to avoid hitting him. As appellant came around to the passenger side of the car, Officer Mezinger noticed that his head was bleeding. Before the officers could ask appellant if he needed help, appellant jumped into the back of the car and said "Start driving now." Shocked, Officer Karr ordered appellant out of the vehicle to which appellant responded "Give me a ride." Just then, radio traffic came over the officers' police radio. Upon hearing the radio traffic, appellant exited the passenger side of the vehicle and walked toward the front of the cruiser. Officer Karr then exited the vehicle, announced that he was a police officer and ordered appellant to stop. Appellant continued walking ahead of the cruiser when Officer Karr said "Stop. I want to talk to you." At that point, appellant took off running towards the accident and Officer Karr began running after him. Appellant then turned down a darkened driveway and ran between the house and a truck parked in the driveway. Officer Karr testified that he followed appellant by about twenty feet and, although it was dark, could see appellant's silhouette the entire time he was chasing him. Officer Karr stated that during this chase he never saw appellant throw anything. Officer Karr then caught up with appellant behind the house, grabbed him by his jacket and threw him to the ground. At that moment, Officer Mezinger, driving the cruiser, pulled around the corner to see Officer Karr apprehending appellant. After Officer Karr had appellant on the ground, Officer Timothy Woolf arrived and helped to handcuff appellant.
After the officers handcuffed appellant behind his back, they turned him around and lay him on the ground. Because of the cut on appellant's head, the officers called an ambulance to transport him to the hospital. Officer Mezinger testified that he then noticed appellant's right front pants pocket pulled partially out of his pants. Officer Woolf also testified that after handcuffing appellant, he rolled him over and began to pat him down for weapons when he noticed that appellant's right front pants pocket was partially pulled out. Officer Mezinger was then instructed to search the area because officers had received a report that there was more than one person in the car that had been in the accident. Officer Mezinger, however, did not find any other suspects. At the same time, Officer Karr retraced his steps when he found a plastic baggie with its top ripped off and containing what he suspected was crack cocaine. The baggie was found between the house and the truck along the four foot wide path where Officer Karr had chased appellant. Officer Karr then decided to return to the area on North Front Street where the cruiser had first encountered appellant to retrace his steps from there. When Officer Karr returned to that area, he discovered the top of a plastic baggie on the ground to the passenger side of where the cruiser had been parked. That baggie appeared to be the top of the baggie that he had found in the driveway. He then returned to the driveway area to continue his search when he found several other pieces of what appeared to be crack cocaine lying on top of a grassy patch in the driveway. The pieces of crack cocaine gathered that night were subsequently weighed at the police station and determined to be 5.2 grams. Subsequent scientific tests, however, revealed that while the pieces were crack cocaine, their true weight was 4.6 grams.
Meanwhile, appellant had been taken to the hospital accompanied by Patrolman Rodger Oddo. Accordingly, Officer Woolf went to the hospital to continue his investigation and to arrest appellant. After arresting appellant, the officers searched him pursuant to that arrest. During that search, the officers found a wadded up five dollar bill in appellant's right front pants pocket, the same pocket that had been partially pulled out when officers apprehended him. Upon opening the five dollar bill, the officers found small granules of what appeared to be crack cocaine. Subsequent scientific tests revealed that the bill contained less than one tenth of a gram of crack cocaine.
Later that morning, after sunrise, Officers Woolf and Mezinger returned to the scene to continue their investigation. Upon searching the same area by the house where the baggie and crack cocaine were found the night before, the officers found several more pieces of what appeared to be crack cocaine. Officer Woolf testified that these pieces were found on top of the grass. Scientific tests subsequently affirmed that the pieces were crack cocaine and that they weighed two grams.
On February 18, 1997, appellant was indicted and charged with one count of possession of 5.2 grams of crack cocaine. Because the amount alleged was more than five grams and less than ten grams of crack cocaine, the offense charged was a third degree felony. Appellant was also charged with tampering with evidence. The case proceeded to a jury trial at which the above evidence was presented. At the conclusion of the evidence, the state move to amend the indictment to read that the amount of crack cocaine possessed by appellant was 6.6 grams rather than 5.2 grams. This motion was based on the testimony of Scott Dobransky, a forensic scientist at the Ohio Bureau of Criminal Identification and Investigation ("BCII"), that the amount of crack cocaine found in and around the baggie amounted to 4.6 grams and that additional crack cocaine found in the same area later in the morning weighed two grams. The court granted the motion over appellant's objection. Subsequently, the jury returned guilty verdicts on both counts of the indictment. On November 4, 1997, the trial court filed a judgment entry of conviction and sentence which sentenced appellant to four years incarceration on the possession of crack cocaine conviction and three years incarceration on the tampering with evidence conviction, sentences to be served consecutively. It is from that judgment that appellant now appeals.
In his first assignment of error, appellant challenges the trial court's granting of the state's motion to amend the indictment at the conclusion of the evidence portion of the trial.
Crim.R. 7(D) reads in relevant part:
 "The court may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged."
The original indictment in this case charged that:
 "On or about December 13, 1996, in the vicinity of North Front and Milton Streets, Fremont, Sandusky County, Ohio, the defendant did knowingly obtain, possess or use a controlled substance, to wit: 5.2 grams of Crack Cocaine, a Schedule II drug."
The indictment further alleged that this offense was in violation of R.C. 2925.11 and that it was a third degree felony because the amount alleged was more than five and less than ten grams. The amount charged in the indictment, 5.2 grams, was evidently based on the weight of the crack cocaine found in and around the baggie by Officer Karr immediately after he had chased appellant. That amount was further based on the reading from an uncalibrated scale at the police station and included the weight of the baggie. Subsequently, Scott Dobransky from BCII weighed the same amount and discovered that its true weight was 4.6 grams. Appellant contends that because the true weight of the crack cocaine was 4.6 grams, it was less than the five grams threshold necessary to charge him with a third degree felony and, therefore, the court's allowance of the amendment changed the nature of the offense. We disagree.
The evidence at the trial below revealed that after sunrise, officers searched the very same area where the baggie and crack cocaine had been found during the night and discovered an additional two grams of crack cocaine. As such, the state moved to amend the indictment to conform to the evidence. This amendment, however, did not change the name or identity of the crime charge. That is, it still charged appellant with possession of more than five and less than ten grams of crack cocaine and still charged appellant with a third degree felony. Accordingly, the trial court did not err in granting the state's motion to amend the indictment and the first assignment of error is not well-taken.
In his second assignment of error, appellant asserts that the verdict rendered by the jury was against the manifest weight of the evidence. Because appellant has only directed this assignment of error to his conviction for possession of crack cocaine, we will not review his conviction for tampering with evidence.
Under a manifest weight standard, an appellate court sits as a "thirteenth juror" and may disagree with the fact finder's resolution of the conflicting testimony. State v.Thompkins (1997), 78 Ohio St.3d 380, 387. The appellate court, "`reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" Id., quoting State v.Martin (1983), 20 Ohio App.3d 172, 175.
Appellant was convicted of possession of crack cocaine in violation of R.C. 2925.11. That statute reads in relevant part:
 "(A) No person shall knowingly obtain, possess, or use a controlled substance.
"* * *
 "(C) Whoever violates division (A) of this section is guilty of one of the following:
"* * *
 "(4) If the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine, whoever violates division (A) of this section is guilty of possession of cocaine."
"Possession" is defined in R.C. 2925.01(K) as "* * * having control over a thing or substance but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." Possession, however, may be actual or constructive. State v.Mann (1993), 93 Ohio App.3d 301, 308. Because appellant was not found to be in actual possession of the crack cocaine, the state in the trial below was required to prove that appellant was in constructive possession of the drugs. To place a defendant in constructive possession, the evidence must demonstrate that the defendant was able to exercise dominion or control over the items. State v. Wolery (1976), 46 Ohio St.2d 316,329, certiorari denied (1976), 429 U.S. 932. Moreover, readily usable drugs found in very close proximity to a defendant may constitute circumstantial evidence and support a conclusion that the defendant had constructive possession of such drugs.State v. Pruitt (1984), 18 Ohio App.3d 50, 58. However, the mere presence of a defendant in an area where illegal drugs are found is, by itself, insufficient to establish constructive possession. Cincinnati v. McCartney (1971), 30 Ohio App.2d 45,48. "Nonetheless, constructive possession can be inferred from a totality of the evidence where sufficient evidence, in addition to proximity, supports dominion or control over the contraband."State v. Walker (Aug. 12, 1999), Franklin App. No. 98AP-1293, unreported.
In the present case, 6.6 grams of crack cocaine were found in and around the bottom portion of a baggie along a narrow path where Officer Karr had just chased appellant. The baggie was not damp and the crack cocaine was laying on top of the grass rather than having settled to the ground. The top of the baggie was found on the ground on the passenger's side of where the officers' unmarked patrol vehicle had first encountered appellant. Appellant had been in that very same spot when he entered and exited the unmarked vehicle. When appellant was apprehended his right front pants pocket was pulled partially out of his pants. Subsequently, officers found a wadded up five dollar bill in that same pocket. That bill contained particles that tested positive for crack cocaine. Finally, it is noteworthy that when Officer Karr told appellant he wanted to speak with him, appellant took off running. It is well-established that an accused's flight constitutes "evidence of consciousness of guilt, and thus of guilt itself." State v.Williams (1997), 79 Ohio St.3d 1, 11, certiorari denied (1998),522 U.S. 1053.
Upon a review of the evidence presented in the trial below and in light of the applicable standard, we cannot say that the verdict finding appellant guilty of possession of crack cocaine was against the manifest weight of the evidence. Accordingly, the second assignment of error is not well-taken.
On consideration whereof, the court finds that appellant was not prejudiced or prevented from having a fair trial and the judgment of the Sandusky County Court of Common Pleas is affirmed. Court costs of this appeal are assessed to appellant.
 _____________________ PIETRYKOWSKI, J.
 Melvin L. Resnick, J., James R. Sherck, J. Mark L. Pietrykowski,J., JUDGES CONCUR.