JOURNAL ENTRY and OPINION
{¶ 1} Defendant-appellant Robert Thornton appeals his conviction of domestic violence. For the reasons below, we reverse the trial court's decision.
 {¶ 2} On February 3, 2001, Thornton appeared unannounced at his ex-wife's residence allegedly to pick up the couple's minor son for visitation. His ex-wife, Sharon, was permitted to live in the couple's marital home until June 2001, at which time Thornton would regain control of the home pursuant to a domestic relations court order.
 {¶ 3} Although the facts are in dispute, Thornton maintains that he was speaking to a neighbor when his wife came out of the home and struck him and his truck with a metal stool. Sharon claims that Thornton came up to her front porch and kicked her in the stomach, and that she grabbed the stool and hit him in self-defense.
 {¶ 4} Thornton left the scene, and both he and Sharon contacted the police shortly after the incident. The police received Thornton's call first and went to his home. The responding officer, Paul Baeppler, testified that Thornton was hostile and confrontational with both the police and EMS. Thornton refused medical treatment, and the police report was not completed because Thornton refused to cooperate.
Baeppler testified that he took a statement from Sharon after they left Thornton's home. He determined that Thornton was the primary aggressor because Sharon was shaken and nervous when he saw her. Sharon admitted striking Thornton with a stool.
 {¶ 5} On April 11, 2001, Thornton was indicted on one count of felony domestic violence and one count of felonious assault. A jury acquitted him of the felonious assault charge but convicted him of domestic violence. The trial court sentenced him to eight months imprisonment.
 {¶ 6} Thornton filed a pro se appellate brief which was supplemented by his attorney. In the fifth assignment of error raised by Thornton's counsel and pro se assignment of error four, Thornton argues that he was deprived of his constitutional right to effective assistance of counsel because his trial counsel failed to preserve several issues for appeal. As explained below, we agree.
 Prosecutorial Misconduct {¶ 7} As argued in Thornton's third assignment of error, the prosecutor made improper comments during closing argument regarding the credibility of witnesses. Due to this error, Thornton was prejudiced by both his counsel's failure to object and by the prosecutor's comments.
The test for prejudice regarding prosecutorial misconduct in closing arguments is "`whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant.'" Statev. Thorntonman (Oct. 3, 2001), 93 Ohio St.3d 274; 754 N.E.2d 1150; Statev. Hessler (2000), 90 Ohio St.3d 108, 125, 734 N.E.2d 1237, 1254, quotingState v. Smith (1984), 14 Ohio St.3d 13, 14, 470 N.E.2d 883, 885.
 {¶ 8} Closing arguments must be viewed in their entirety to determine whether the disputed remarks were prejudicial. State v. Mann
(1993), 93 Ohio App.3d 301, 312, 638 N.E.2d 585. Isolated comments by a prosecutor are not to be taken out of context and given their most damaging meaning. State v. Carter (2000), 89 Ohio St.3d 593,734 N.E.2d 345; citing, Donnelly v. DeChristoforo (1974), 416 U.S. 637,647, 94 S.Ct. 1868, 1873, 40 L.Ed.2d 431, 439. An appellant is entitled to a new trial only when a prosecutor asks improper questions or makes improper remarks and those questions or remarks substantially prejudiced appellant. State v. Smith, 14 Ohio St.3d 13, 470 N.E.2d 883.
 {¶ 9} Although the prosecution is normally entitled to a certain degree of latitude in its concluding remarks, State v. Woodards (1966),6 Ohio St.2d 14; State v. Liberatore (1982), 69 Ohio St.2d 583, 589, an attorney may not express his or her belief or opinion regarding the credibility of a witness. State v. Jackson, 92 Ohio St.3d 436,2001-Ohio-1266, citing, State v. Smith, 14 Ohio St.3d at 14.
In Smith, the prosecutor referred to defense evidence as "lies," "garbage," "garbage lies," "[a] smoke screen," "a well conceived and well rehearsed lie," and further stated that defense counsel had suborned perjury by manufacturing lies. The Ohio Supreme Court found that "such conduct is well beyond the normal latitude allowed in closing arguments and is clearly improper." Id.
 {¶ 10} Here, during closing argument the prosecutor made several improper statements regarding the credibility of witnesses. First, the prosecutor noted that there were differences in the perspectives of Sharon and her neighbor Willie Brundidge, both of whom testified on behalf of the State, but stated that "those are the kinds of discrepancies you get in a case where witnesses are telling the truth."
 {¶ 11} In comparison, the prosecutor further stated:
 {¶ 12} "[W]hat you don't get too often in a case, and I find it horrifying when you do get it, is instances where people out and out lie, and I hate to use the word `lie,' but when somebody comes in and says, `I was there, and I saw what happened and that's what happened,' and that is perjury; it is lying, and it is ugly, offensive, and an ugly thing in the justice system."
 {¶ 13} The prosecutor then referred specifically to the testimony of the defendant and his witness, Denise Clemmons, stating:
 {¶ 14} "Why would [Thornton] bring [Clemmons] in to say that she was there, and `this is what happened?' That is perjury, and he says she was there, and she saw what happened too, and that is perjury.
 "If he is innocent, why is he bringing in his sister to lie and perjure herself? Why is he putting perjured testimony before you; it is offensive." (Tr. 666).
 {¶ 15} The prosecutor then stated, "Lying is where you lie to cover up a bias you have. Look at [defense witness] Mr. Holt. He states `I have got no bias.' * * * I think, during the cross-examination, that was disproved to you * * *."
 {¶ 16} The prosecutor then discussed witness credibility, how the jury must decide whether the witnesses' demeanor on the stand was calm or hostile. She reviewed and compared the demeanor of Sharon, Thornton, Clemmons, and Holt. Among other comments, she notes how respectful Sharon was during her testimony and that Thornton was combative during cross-examination while his credibility was being challenged.
 {¶ 17} Finally, in reference to Officer Baeppler's observations about Thornton, the prosecutor asked the jury, "Does Officer Baeppler have any reason to lie to you about that?" (Tr. 673).
 {¶ 18} In summation, the prosecutor again referred to Thornton's testimony stating "Why would he deny that he kicked her at all? Just shows you, again, that he is lying." (Tr. 689).
The State argues in the instant case, just as the prosecution argued in Smith, that any error was harmless in view of the sufficiency of the evidence to sustain a conviction. The State also urges that there was no prejudice because the court instructed the jury that closing arguments were not evidence.
 {¶ 19} However, the Smith court found that the general instruction that arguments of counsel are not to be considered as evidence was insufficient to correct flagrant prosecutorial misconduct.
 {¶ 20} Here, several pages of transcript[1] serve as evidence of the prosecutor's flagrant misconduct. During her closing argument, the prosecutor repeatedly denounces the credibility of defense witnesses and vouches for the veracity of the State's witnesses. Such action makes it impossible for this court to determine, beyond a reasonable doubt, that the jury would have found Thornton guilty had there been no misconduct on the part of the prosecution.
 {¶ 21} This is especially true given the nature of the underlying incident. This case involves a domestic dispute, where Thornton claims one thing and his ex-wife claims another. Thornton denies that he ever struck Sharon, and in support of this claim Clemmons and Holt testified that they did not see Thornton strike Sharon. On the other hand, Sharon claims that Thornton hit her. Accordingly, the credibility of the State's witnesses — Sharon, Brundidge, and Baeppler — was important to the State because their testimony was essential for conviction.
Clearly, the credibility of the witnesses is the very crux of this matter. Thus, we conclude that the improper remarks by the prosecution in closing argument prejudicially affected Thornton's substantial rights.
 {¶ 22} Accordingly, we reverse and remand the matter for a new trial.
 {¶ 23} The remaining assignments of error are rendered moot by our analysis above. See App.R. 12(A)(1)(c).
This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.
It is, therefore, considered that said appellant recover of said appellee his costs herein.
It is ordered that a special mandate be sent to the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. McMONAGLE, A.J. CONCURS; TERRENCE O'DONNELL, J. CONCURS INSEPARATE CONCURRING OPINION
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. II, Section 2(A)(1).
[1] See Tr. pp. 665-674 and 689.