JOURNAL ENTRY and OPINION
{¶ 1} Appellant Charles Courtney appeals his conviction for aggravated assault with a firearm. He assigns the following errors for our review:
"I. The trial court erred in denying appellant's motion foracquittal as to the charges."
 "II. Appellant's convictions are against the manifest weightof the evidence."
 "III. The trial court erred in its jury instructions regardingaggravated assault."
 {¶ 2} Having reviewed the record and pertinent law, we affirm Courtney's conviction. The apposite facts follow.
 {¶ 3} The Cuyahoga County Grand Jury indicted Courtney on one count each of felonious assault, kidnapping, and domestic violence. All three counts had a firearm specification attached. Prior to trial, the domestic violence count was dismissed. The remaining counts proceeded to a jury trial.
 {¶ 4} At trial, the victim, Tamika Appling, testified that she had a year-and-a-half affair with Charles Courtney, who was married. On November 2, 2003, she and Courtney attended a birthday party and then proceeded to a bar on Cedar Avenue with a few of her family members, who had also attended the birthday party.
 {¶ 5} While at the bar, Appling and Courtney argued as they left the bar, Courtney and Appling called each other a "bitch." Once in the car, Courtney warned Appling, "you call me another bitch again and I'm going to hurt you." Appling responded by stating, "you are a bitch, bitch." As Appling turned towards him, Courtney struck Appling on the right side of her face. Appling then retrieved a gun from a cubby on the floor of the passenger side of the vehicle. She told Courtney, "you hit me again, I'm going to kill you with your own gun."
 {¶ 6} Courtney wrestled the gun away from Appling and put the gun under his legs. He slapped her and pointed the gun at her and told her, "someone is going to die tonight. Guess who it's going to be?" Afterwards, he placed the gun under his legs. Appling repeatedly requested to be let out of the car. She spotted an officer assisting another driver in the area of Woodland Avenue and banged on the window to get his attention, but the officer failed to notice her.
 {¶ 7} Courtney drove the car to the parking lot of Victory White Metals, where he worked. He told Appling "if I shoot myself, guess who they will think did it?" She again requested to be let out of the car. Courtney started to cry and exited the car. Appling got into the driver's seat and drove away. As she got about five seconds away, she heard a gun shot. Fearful that Courtney had injured himself, she returned. She discovered Courtney slumped against the fence. She exited the car to investigate to determine whether he was injured. As she walked towards him, he sat up and pointed the gun at her. She convinced him to put the gun down and to get into the car.
 {¶ 8} Courtney controlled her driving by pulling on the steering wheel. Eventually she pulled off the freeway and exited the car. As she walked away, Courtney grabbed her and attempted to apologize, at which time, a police officer arrived. When Courtney saw the officer, he threw the gun into the grassy area next to the freeway.
 {¶ 9} As the officer exited his vehicle, Appling screamed that Courtney had a gun. The officer immediately pulled his gun out of his holster and ordered Courtney to show his hands and to get on the ground. When a back-up officer arrived, Courtney was hand-cuffed and placed in the patrol car. The officers retrieved a handgun from the grass, which Appling identified as Courtney's gun. It was loaded with six live rounds.
 {¶ 10} The jury found Courtney not guilty of felonious assault or kidnapping, but found him guilty of aggravated assault with a firearm specification. The trial court sentenced Courtney to six months on the aggravated assault charge and three years for the firearm specification, to be served consecutively.
 Motion For Acquittal/Manifest Weight {¶ 11} In his first and second assigned errors, Courtney argues his conviction is not supported by sufficient evidence and is against the manifest weight of the evidence. He argues no evidence existed that showed he intended to use the gun or that the gun was operable; he also argues Appling was not a credible witness. We disagree.
 {¶ 12} The standard of review with regard to a motion for acquittal is set forth in State v. Bridgeman:[1]
 "Pursuant to Criminal Rule 29(A), a court shall not order anentry of judgment of acquittal if the evidence is such thatreasonable minds can reach different conclusions as to whethereach material element of a crime has been proved beyond areasonable doubt."[2]
 {¶ 13} Bridgeman must be interpreted in light of the sufficiency test outlined in State v. Jenks,[3] in which the Ohio Supreme Court held:
"An appellate court's function when reviewing the sufficiencyof the evidence to support a criminal conviction is to examinethe evidence submitted at trial to determine whether suchevidence, if believed, would convince the average mind of thedefendant's guilt beyond a reasonable doubt. The relevant inquiryis whether, after viewing the evidence in a light most favorableto the prosecution, any rational trier of fact could have foundthe essential elements of the crime proven beyond a reasonabledoubt. (Jackson v. Virginia [1979], 443 U.S. 307,99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)"
 {¶ 14} When the argument is made that the conviction is against the manifest weight of the evidence, the appellate court is obliged to consider the weight of the evidence, not its mere legal sufficiency. The defendant has a heavy burden in overcoming the fact finder's verdict. As the Ohio Supreme Court held inState v. Thompkins:[4]
 "Weight of the evidence concerns `the inclination of thegreater amount of credible evidence, offered in a trial, tosupport one side of the issue rather than the other. It indicatesclearly to the jury that the party having the burden of proofwill be entitled to their verdict, if, on weighing the evidencein their minds, they shall find the greater amount of credibleevidence sustains the issue which is to be established beforethem. Weight is not a question of mathematics, but depends on itseffect in inducing belief.' Blacks, supra, at 1594.
 " * * * The court, reviewing the entire record, weighs theevidence and all reasonable inferences, considers the credibilityof witnesses and determines whether in resolving conflicts in theevidence, the jury clearly lost its way and created such amanifest miscarriage of justice that the conviction must bereversed and a new trial ordered. The discretionary power togrant a new trial should be exercised only in the exceptionalcase in which the evidence weighs heavily against theconviction."
 {¶ 15} Courtney argues that his convictions for aggravated assault and the firearm specification were not supported by the evidence because there was no evidence the gun was operable and, hence, there was no evidence that the gun was a deadly weapon. R.C. 2903.12(A) defines aggravated assault as follows:
"(A) No person, while under the influence of sudden passion orin a sudden fit of rage, either of which is brought on by seriousprovocation, occasioned by the victim that is reasonablysufficient to incite the person into using deadly force, shallknowingly:
 "(1) Cause serious physical harm to another * * *;
 "(2) Cause or attempt to cause physical harm to another bymeans of a deadly weapon or dangerous ordnance as defined insection 2923.11 of the Revised Code."
 {¶ 16} R.C. 2923.11(B) defines "firearm" as follows:
"(B)(1) `Firearm' means any deadly weapon capable of expellingor propelling one or more projectiles by the action of anexplosive or combustible propellant. `Firearm' includes anunloaded firearm, and any firearm that is inoperable but that canreadily be rendered operable."
 {¶ 17} The statute further states:
"(2) When determining whether a firearm is capable ofexpelling or propelling one or more projectiles by the action ofan explosive or combustible propellant, the trier of fact mayrely upon circumstantial evidence, including, but not limited to,the representations and actions of the individual exercisingcontrol over the firearm."
 {¶ 18} In the instant case, the victim testified that Courtney pointed the gun at her and stated, "someone is going to die tonight. Guess who it's going to be?" In determining the operability of a firearm, the "trier of fact may consider all relevant facts and circumstances surrounding the crime, which include any implicit threat made by the individual in control of the firearm."[5] Here, Courtney's statement that "someone is going to die tonight" while pointing the gun at the victim indicated that the gun was operable.
 {¶ 19} Furthermore, in State v. Thompkins, the Ohio Supreme Court rejected the view that the circumstantial proof of operability must consist of certain recognized indicia, such as bullets, the smell of gunpowder, bullet holes, or verbal threats by the user of the weapon that he or she would shoot the victim.[6] The Thompkins court held that anything that looks like a gun and is brandished is "capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant."[7] Thus, operability or potential operability may be proven where an individual "brandishes a gun and implicitly but not expressly threatens to discharge the firearm at the time of the offense."[8]
Therefore, Courtney's simply pointing the gun at Appling is evidence the firearm was operable.
 {¶ 20} Moreover, the victim also testified she heard a gun shot five seconds after she pulled away from the parking lot, indicating the gun was operable. Officer Stanton also testified that the gun contained six live rounds. Therefore, although there is no direct evidence the gun was capable of shooting, the circumstantial evidence supports the inference that the gun was indeed operable.
 {¶ 21} Courtney also contends Appling's testimony regarding the manner in which she was slapped was not credible. Appling testified Courtney slapped her on the right side of the face while he was driving. However, Courtney fails to consider that Appling also stated her face was turned towards him when the slap occurred. On redirect-examination, Appling stated it was plausible that Courtney slapped her with his left hand while driving.
 {¶ 22} Courtney also contends that Appling's testimony that she returned to check on Courtney after hearing the gun shot was not believable and argues that Appling was the aggressor, not Courtney. However, ultimately, the victim's credibility was for the jury to discern. The trier of fact is in the best position to observe the witness's demeanor, voice inflection, and mannerisms in determining each witness's credibility.[9] Accordingly, on issues of credibility, we defer to the trier of fact, which was the jury in the instant case. Courtney's first and second assigned errors are overruled.
 Jury Instruction {¶ 23} In his third assigned error, Courtney contends the trial court erred in instructing the jury as to aggravated assault. Courtney argues aggravated assault is not a lesser included offense of assault; therefore, the court erred in instructing the jury that it had to first find Courtney not guilty of felonious assault before considering aggravated assault.
 {¶ 24} The record indicates Courtney failed to object to the jury instruction. His "failure to object to [the] jury instruction constitutes a waiver of any claim of error relative thereto, unless, but for the error, the outcome of the trial clearly would have been otherwise."[10] We conclude the trial court's instruction did not constitute plain error.
 {¶ 25} We agree with Courtney that aggravated assault is not a lesser included offense of felonious assault. It is a crime of inferior degree of felonious assault because the elements of the two offenses are identical except for the additional mitigating element of serious provocation.[11] Having concluded this, we agree that the trial court initially incorrectly advised the jury that they could consider the charge of aggravated assault only if they found Courtney not guilty of felonious assault.[12] However, the trial court did thereafter correctly advise the jury as follows:
"If you find beyond a reasonable doubt that the State provedall the essential elements of felonious assault, but if youdecide from all the evidence that the defendant acted under theinfluence of sudden passion or in a sudden fit of rage, eitherwhich was brought on by serious provocation occasioned by TamikaAppling, a provocation that was reasonably sufficient to incitethe defendant into using deadly force, then your verdict must beguilty of aggravated assault."[13]
 {¶ 26} A single challenged jury instruction may not be reviewed piecemeal or in isolation, but must be reviewed within the context of the entire charge.[14] Reviewing the entire jury charge, we find no plain error because the trial court correctly instructed the jury the second time.
 {¶ 27} Moreover, Courtney was not prejudiced by the trial court's initial misstatement of law because the jury did in fact find him guilty of aggravated assault, not felonious assault. Accordingly, Courtney's third assigned error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Rocco, P.J., and Corrigan, J., concur.
[1] (1978), 55 Ohio St.2d 261, syllabus.
[2] See, also, State v. Apanovitch (1987), 33 Ohio St.3d 19,23; State v. Davis (1988), 49 Ohio App.3d 109, 113.
[3] (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
[4] 78 Ohio St.3d 380, 386-387, 1997-Ohio-52.
[5] State v. Thompkins (1997), 78 Ohio St.3d 380 at paragraph three of the syllabus. See, also State v. Mann (1993),93 Ohio App.3d 301, 311.
[6] Id. at 382.
[7] Id. at 383.
[8] Id. at 384. See, also State v. Reynolds,79 Ohio St.3d 158, 162, 1997-Ohio-304; State v. Murphy (1990),49 Ohio St.3d 206 at syllabus.
[9] State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
[10] State v. Twyford, 94 Ohio St.3d 340, 350,2002-Ohio-894.
[11] State v. Deem (1988), 40 Ohio St.3d 205, 210; State v.Mays, 161 Ohio App.3d 175, 2005-Ohio-2609.
[12] State v. Carter (1985), 23 Ohio App.3d 27, paragraph two of syllabus.
[13] Tr. at 338.
[14] See, State v. Hardy (1971), 28 Ohio St.2d 89.