JOURNAL ENTRY AND OPINION
{¶ 1} This is an appeal from a jury verdict, following trial before Judge Christopher A. Boyko, that convicted Clyde Richards for possession of marijuana in an amount exceeding twenty kilograms and possession of criminal tools. He contends that there is insufficient evidence to sustain a conviction for possession of drugs, that the judge erred in allowing the jury to submit questions to witnesses, that his lawyer was ineffective in several ways, that his indictment and the judge's resulting jury instructions were flawed, and that the judge impermissibly failed to read into the record his answers to two questions the jury submitted to him while deliberating. We affirm.
 {¶ 2} On October 9, 2000, Terry Turner and Christopher Barstow were working at USF Worldwide ("USF"), a shipping company located in Middleburg Heights, that delivers freight directly to the address on the package label. A man identified as "Hakim" had repeatedly called USF to see if three crates, from a California company called Amirco and addressed to a Cleveland company called A.B. Boadley, Inc., had arrived at the Engle Road warehouse. Because "Hakim" had repeatedly called about two other identically addressed shipments that had been personally claimed at the warehouse in lieu of prepaid delivery, Turner and Barstow became suspicious of the contents of the crates, opened one of them, and discovered what was later positively identified as "bricks" of marijuana.
 {¶ 3} Turner called Middleburg Heights police about his discovery, but, before they could arrive, "Hakim" called and Barstow informed him that the shipment had arrived. Shortly thereafter, Richards appeared at the warehouse and requested the three crates from Turner. Because he had the open crate in his office, Turner attempted to stall by telling Richards that the crates had not yet been received. At this point, Richards specifically pointed out the two other crates still in the warehouse and identified them as his shipment. Turner told him that the third crate might be on a truck somewhere and he would attempt to locate it. He went back to his office and called 911 to inform police that someone had arrived to claim the crates and, when he returned to the warehouse floor, Richards was gone.
 {¶ 4} Turner went outside the warehouse to get the license plate number of Richards' vehicle and, just as Middleburg Heights Detective James Clift and Sergeant Glenn Blatnica were arriving, saw him driving away as the passenger in a black Mazda. Turner told the officers about the Mazda and they pursued it about one mile, eventually pulling it over. Richards and the driver, Michael Smith (aka Kenneth Green), were taken to the Middleburg Heights Police Station for booking while Detective Clift and Sergeant Blatnica returned to USF and secured all three crates. When they obtained search warrants for the other two crates, they opened them and each contained more marijuana. The aggregate contents of the three crates was forty-seven kilograms, or about one hundred four pounds of marijuana.
 {¶ 5} At the station, Smith dropped a piece of paper, stepped on it to try to conceal it, and had to be forcibly moved so that officers could see what it was: the receipt for the three crates which would have been given to the person shipping the crates at the USF facility in California. With the cooperation of the U.S. Customs Department, the DEA, and the F.B.I., police learned that A.B. Boadley, Inc. was a fictitious entity that had used addresses of legitimate East Cleveland businesses.
 {¶ 6} After tracing the contact phone number contained on one of the crates' shipping invoices to the first floor unit of a double home at 1744 Coit Avenue in East Cleveland, U.S. Customs Special Agent Susan Lavoie went there and spoke to a woman who identified herself as Shontell Gray. She stated that she lived at the address, that other people she did not know used the house as well, denied she knew anyone named Clyde Richards, Michael Smith or Kenneth Green, and refused the agent's request to enter the home. Although Special Agent Lavoie noted the aroma of marijuana and noticed a small child looking out at her through a window, she felt insufficient probable cause existed to justify a warrantless search of the home, so she left the premises.
 {¶ 7} On October 13, 2000, a variety of law enforcement personnel executed a search warrant and entered and searched Gray's home. They found a piece of a crate from an earlier Amirco-to-A.B. Boadley shipment, many small plastic baggies, a digital scale, luggage, airplane tickets, shipping invoices, and many personal papers and effects with the names of Richards and Smith on them, including Richards' October 7, 2000 airplane ticket for a flight from California to Cleveland. They also found identification with Smith's picture but a different name, and a small amount of marijuana in a plastic baggie.
 {¶ 8} Richards and Smith were each indicted on one count of possession of marijuana in an amount exceeding 20 kilograms, two counts of preparation of drugs for sale, one of which carried a juvenile specification, and two counts of possession of criminal tools. Following the jury trial, each was convicted of the possession charge and one count of possession of criminal tools. The jury specifically found the quantity of marijuana possessed exceeded twenty kilograms and identified the automobile, pagers, and cellular telephones as the items constituting criminal tools. Under R.C. 2925.11(C)(3)(f), possession of such marijuana is a second degree felony carrying a mandatory eight-year prison term, and the judge imposed that on each, together with a concurrent six-month prison term on the possession of criminal tools count, a five-year driver's license suspension, a suspended $7,500 fine due to indigency, and he advised each of five years of post-release control.
 {¶ 9} Richards, through his lawyer, asserts three assignments of error and five assignments of error pro se.
 {¶ 10} "I. Clyde Richards's Conviction for Possession of Marijuana Denied Him His Liberty Without Due Process of Law, Because it Was Not Supported by Evidence Sufficient to Prove Him Guilty of the Crime Beyond a Reasonable Doubt."
 {¶ 11} "Pro Se Assignment I. The Trial Court Erred and Abused its Discretion When it Overruled Appellant's Crim. Rule 29 Motion and Allowed the State to Convict Him of Possession of Marijuana in Excess of 20,000 Kilograms Based on Insufficient Evidence."
 {¶ 12} Richards contends that the jury lacked sufficient evidence to find, beyond a reasonable doubt, that he "possessed" the marijuana found in the crates, and his conviction on count I must be reversed. We disagree.
 {¶ 13} Whether the evidence is legally sufficient to sustain a verdict is a question of law.[1] According to Crim.R. 29,
 {¶ 14} "The court on motion of the defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction on such offense or offenses. * * *"
 {¶ 15} Whether phrased in terms of a Crim.R. 29 motion, or in terms of a sufficiency of the evidence argument, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.[2]
 {¶ 16} R.C. 2925.11 prohibits knowingly possessing marijuana in a quantity exceeding twenty kilograms. "`Possess' or `possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found."[3] Possession may be actual or constructive.[4]
Constructive possession requires some evidence that the person exercised or has the power to exercise dominion or control over the object, even though that object may not be within his immediate physical possession.[5] Furthermore, two or more persons may jointly possess an item.[6]
 {¶ 17} Here, Turner testified that Richards entered the USF warehouse, his stated purpose was to pick up the crates containing the marijuana, he claimed entitlement to them and identified two of them by sight. Turner and Barstow testified that a potential recipient, in order to actually acquire a parcel he claimed, must merely sign for it; no receipt, shipping bill, or other evidence of ownership is necessary.
 {¶ 18} While Richards asserts that no evidence of possession was presented, or that the evidence shows, at best, an attempt to possess the crates, the evidence in this case demonstrates attempted physical possession of the crates and actual constructive possession of them. Richards' conduct, conveying to Turner his asserted right to the crates and identification of them by sight, are clear acts of exercise of dominion or control over them. He has made no claim on appeal that the State failed to prove either that he knew the crates contained marijuana or that the marijuana was not in an amount exceeding twenty kilograms. This assignment of error is not well taken.
 {¶ 19} "Pro Se Assignment II. The Trial Court Erred And Abused Its Discretion, When It Denied Appellant His Constitutional Right To A Fair Trial Before A Jury When It Gave Incredible Instruction [Sic] To The Jury Which Improperly And Incorrectly Defined The Elements Of The Crime Under Deliberation."
 {¶ 20} In addition to a charge of possession of marijuana in an amount exceeding twenty kilograms, the judge charged the jury as to the crime of attempt, but erroneously instructed the jury that, in order for it to convict Richards of the crime of attempt, it must find that he "knowingly obtained, possessed or used a controlled substance, to wit, marijuana, * * *." Continuing, the judge proceeded to define attempt. Richards argues that this instruction was improper and confusing, and mandates reversal.
 {¶ 21} Because Richards did not object to this jury instruction when made, our review of its inclusion in the charge to the jury is limited to whether it constitutes plain error.[7]
 {¶ 22} "Under Crim.R. 52(B), `plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.' By its very terms, the rule places three limitations on a reviewing court's decision to correct an error despite the absence of a timely objection at trial. First, there must be an error, i.e., a deviation from a legal rule. * * * Second, the error must be plain. To be `plain' within the meaning of Crim.R. 52(B), an error must be an `obvious' defect in the trial proceedings. * * * Third, the error must have affected `substantial rights.' We have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial. * * *
 {¶ 23} "Even if a forfeited error satisfies these three prongs, however, Crim.R. 52(B) does not demand that an appellate court correct it. Crim.R. 52(B) states only that a reviewing court `may' notice plain forfeited errors; a court is not obliged to correct them. * * * We have acknowledged the discretionary aspect Crim.R. 52(B) by admonishing courts to notice plain error `with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.' * * *"[8]
 {¶ 24} While we acknowledge that the lesser included offense of attempt obviously does not require that a jury find beyond a reasonable doubt that a defendant actually committed the underlying offense in order to properly issue a finding of guilty, we decline to reverse on this arguable assignment of error because the error did not affect Richards' substantial rights or provoke a manifest miscarriage of justice. An attempt instruction was not warranted in this case, and defective jury instruction does not rise to the level of plain error unless it can be shown that the outcome of the trial clearly would have been otherwise if the instruction was properly given.[9]
 {¶ 25} A court has no duty to include a jury instruction on any conceivable lesser included offense of an offense as indicted.[10] "But a court must charge on a lesser included offense `only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense.'[11]"[12]
Failure to give such instruction under such circumstances amounts to prejudicial, reversible error because, if an instruction is not given when warranted by the evidence, a jury may convict the defendant of the greater charged offense, even though not convinced of guilt beyond a reasonable doubt, simply because the evidence shows he was obviously guilty of some offense.[13]
 {¶ 26} In this case, the evidence indicated clear constructive possession, distinguished from the attempted actual or physical possession of the crates containing the marijuana. Any verdict premised on attempted physical possession would have wrongly ignored the law as it pertains to constructive possession and would not have acknowledged the evidence presented. Since any error predicated on an erroneous attempt charge was harmless and the charge was not justified in the first instance, reversal is not required. This assignment of error is not well taken.
 {¶ 27} "Pro Se Assignment III. The Trial Court Erred and Abused its Discretion, When it Erroneously Instructed the Jury That it must Find Beyond a Reasonable Doubt That Appellant Possessed 20 Kilograms of Marijuana."
 {¶ 28} Richards' indictment actually accuses him of knowingly possessing a quantity of marijuana in excess of "twenty thousand kilograms,"[14] and he now assigns as error the judge's charge to the jury instructing them that the possession offense under consideration related to marijuana in the amount exceeding twenty, not twenty thousand, kilograms of marijuana.
 {¶ 29} We note at the outset that both the prosecutor and Richards' lawyer purported to "read" from the indictments in their opening statements; in reciting the possession of marijuana count, both lawyers specifically remarked that the indictment alleged that the amount of marijuana mentioned was one in excess of twenty kilograms. Richards' lawyer also did not object to the charge as given, stating the possession offense in terms of the amount being charged as in excess of twenty kilograms of marijuana. We also note that the greatest penalty for the offense of possession of marijuana is for possession in an amount greater than twenty kilograms.[15]
 {¶ 30} This is evidence that the "twenty thousand kilograms" language in the indictment is a typographical error meant to read either "twenty kilograms" or "twenty thousand grams." The failure of Richards' lawyer to timely object also requires a plain error review of this assignment of error.
 {¶ 31} Kenneth Ross, a forensic scientist with BCI, confirmed that the suspected substance was marijuana and fixed its weight at forty-seven kilograms, or approximately one hundred four pounds. It is the duty of a trial judge to instruct the jury based on the issues presented by the case and the evidence and pleadings.[16] As such, there is no manifest injustice presented by Richards' conviction for an offense of possessing an amount of marijuana greater than twenty kilograms, as weight or identity of the marijuana was not a contested issue at trial. Moreover, even if the indictment was meant to allege possession of twenty thousand kilograms of marijuana, which is in serious doubt, the grand jury would have found implicit probable cause for the possession of twenty kilograms of marijuana in indicting on an amount one thousand times as large. This assignment of error is without merit.
 {¶ 32} "Pro Se Assignment IV: The Trial Court Committed Prejudicial Error And Abused It's Discretion, In That, While The Jury Was Deliberating The Trial Court Answered Questions For The Jury, Outside The Presence Of The Appellant And Failed To Read The Questions And Answers Thereto Into The Record."
After the jury began its deliberations, it submitted three sets of questions about the instructions the judge had given. The prosecutor and Richards' lawyer were present when the judge received them and made written responses; both agreed with the proposed answers for the first two sets of instructions, but Richards' lawyer objected to the proposed answer to the third. On the record, Richards' lawyer preserved her objection and the judge stated that the other proposed answers were given without objection. Richards' lawyer explicitly waived his presence for these proceedings, and did not object to the judge's omission in not reading agreed upon answers to the court reporter.
 {¶ 33} Richards asserts a violation of his constitutional right to be present at a critical stage of his trial and prejudice by failing to make the agreed upon answers part of the record. The Ohio Supreme Court, in State v. Campbell,[17] addressed this point:
 {¶ 34} "A defendant has a Fourteenth Amendment due process right to be present at every critical stage of his trial.[18]
 The question is whether `his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge.'[19]
 {¶ 35} "[The Defendant] had no right to be present at the legal discussion of how the [jury] question should be answered.[20] Nor did he have a right to be present when the judge sent the [response] note to the jury room. Although the oral delivery of jury instructions in open court is a critical stage of trial,[21] the trial court here did not instruct the jury in open court; instead, he sent a note. A defendant benefits from his presence, and may be harmed by his absence, when instructions are given in open court. * * * But these potential benefits and harms do not exist when the judge merely sends a note to the jury room. We therefore hold that the sending of the note was not a critical stage of the trial."[22]
 {¶ 36} Moreover, it was not necessary for the answers to the first two sets of jury questions to be announced "on the record." The actual notes used to answer, along with the jury's written questions, are contained in the record submitted to this court and were available to Richards for appellate purposes as well. He has demonstrated no prejudice, and this argument has no merit.
 {¶ 37} "Assignment II. The Trial Court Erred And Denied Clyde Richards His Constitutional Right To A Fair And Impartial Jury, When It Permitted The Jury To Ask The Witnesses Questions."
 {¶ 38} In State v. Gilden,[23] the First District Court of Appeals found that permitting jurors to submit written questions to the judge for submission in open court to testifying witnesses, after the judge had an opportunity to review them for evidentiary propriety and the parties were given opportunity to lodge objections to specific questions, was a per se violation of a defendant's right to due process of law, to trial by a neutral jury and, by extension, the right to counsel. The court noted,
 {¶ 39} "The most obvious problem with allowing jurors to question witnesses is the unfamiliarity of jurors with the rules of evidence. * * * Other potential problems include (1) Counsel may be forced to either make an objection to a question in front of the juror who asks the question, at the risk of offending the juror, or withhold the objection and permit prejudicial testimony to come in without objection; (2) juror objectivity and impartiality may be lessened or lost; (3) if a juror submits a question in open court, the other jurors are informed as to what the questioning juror is thinking, which may begin the deliberation process before the evidence is concluded and before final instructions from the court; (4) if the juror is permitted to question the witness directly, the interaction may create tension or antagonism in the juror; and (5) the procedure may disrupt courtroom decorum."[24]
 {¶ 40} Gilden, however, was the first Ohio appellate case to announce a new rule of law that allowing jurors to question witnesses was per se grounds for reversal of a conviction, based mostly on the law of Nebraska and Mississippi.[25] Most courts, including this district, have allowed judges to permit jurors to submit questions to witnesses, subject to an abuse of discretion, and have required a defendant to demonstrate prejudice before such a practice will result in reversal.[26]
This court's position on this issue was established in State v.Sheppard,[27] which states that, although it is not encouraged, "the right of a juror to question a witness during trial is within the sound discretion of the court."[28]
 {¶ 41} We are aware that the pending appeal in State v.Fisher,[29] will resolve this issue but, despite the suggestion by both parties that we hold our decision in abeyance, we do not wish to delay the instant appeal. Richards has not pointed to any specific question asked by a juror as prejudicial, nor has he argued that the judge abused his discretion in allowing the practice. We choose to follow our prior case law and overrule this assignment of error.
 {¶ 42} "Assignment III. Trial Counsel's Deficient Representation On Several Important Issues Denied Clyde Richards Of His Constitutional Right To Effective Assistance Of Counsel.
 {¶ 43} "Pro Se Assignment V. Appellant Was Denied The Effective Assistance Of Counsel Throughout His Criminal Trial In Violation Of HisSixth And Fourteenth Amendment Rights Under The United States Constitution And Article I, Section 10, Of The Ohio Constitution."
 {¶ 44} "Ineffective-assistance claims are governed by a two-prong test first articulated in Strickland v. Washington.[30] First, the appellant must show that counsel's performance "fell below an objective standard of reasonableness,"[31] and "made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment."[32] A reviewing court must strongly presume that "counsel's conduct falls within the wide range of reasonable professional assistance," and must "eliminate the distorting effects of hindsight, * * * and * * * evaluate [counsel's] conduct from counsel's perspective at the time."[33]"[34] "Second, the appellant must demonstrate prejudice — i.e., "a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different."[35] "A reasonable probability is a probability sufficient to undermine confidence in the outcome."[36]"[37]
 {¶ 45} Because there was sufficient evidence to establish the offense of possession of marijuana in an amount exceeding twenty kilograms, the jury instructions were unquestionably not grounds for reversal. Even if an objection was made at trial, Richards was not denied his constitutional right to be present at each stage of his trial and the judge permissibly allowed the jury to submit questions to testifying witnesses. None of these alleged errors operated as a denial of effective representation or that, but for the alleged errors, it is reasonably probable that the result of the trial would have been an acquittal. These assignments are error are not well taken.
Judgment affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
COLLEEN CONWAY COONEY, J., AND DIANE KARPINSKI, J., CONCUR.
[1] State v. Robinson (1955), 162 Ohio St. 486, 55 Ohio Op. 388,124 N.E.2d 148.
[2] See State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52,678 N.E.2d 541; State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492.
[3] R.C. 2925.01(K).
[4] State v. Haynes (1971), 25 Ohio St.2d 264, 269-270,267 N.E.2d 787.
[5] State v. Hankerson (1982), 70 Ohio St.2d 87, 434 N.E.2d 1362, syllabus; State v. Wolery (1976), 46 Ohio St.2d 316, 329, 348 N.E.2d 351,360.
[6] State v. Mann (1993), 93 Ohio App.3d 301, 308, 638 N.E.2d 585,589; see, also, State v. Correa, (May 15, 1997), Cuyahoga App. No. 70744.
[7] Crim.R. 30.
[8] State v. Barnes, 94 Ohio St.3d 21, 27, 2002-Ohio-68 (internal citations omitted).
[9] Cleveland v. Buckley (1990), 67 Ohio App.3d 799, 588 N.E.2d 912.
[10] State v. Davis (1983), 6 Ohio St.3d 91, 95, 451 N.E.2d 772,775; State v. Ranzy (Aug. 5, 1993), Cuyahoga App. No. 63472.
[11] State v. Thomas (1988), 40 Ohio St.3d 213, 533 N.E.2d 286, paragraph two of the syllabus. See also State v. Kidder (1987),32 Ohio St.3d 279, 513 N.E.2d 311.
[12] State v Campbell, 90 Ohio St.3d 320 340-341, 2000-Ohio-183,738 N.E.2d 1178 1200.
[13] State v. Kidder, supra, at 281.
[14] Richards and Smith were originally charged in a prior indictment comprised of one count of possession of marijuana in an amount exceeding twenty kilograms, one count of preparation of drugs for sale and one count of possession of criminal tools. They were later re-indicted, at which time additional preparation of drugs for sale and possession of criminal tools counts were added.
[15] 15R.C. 2925.11.
[16] State v. Jackson (1986), 22 Ohio St.3d 281, State v. Guster
(1981), 66 Ohio St.2d 266.
[17] 90 Ohio St.3d 320, 2000-Ohio-183.
[18] Snyder v. Massachusetts (1934), 291 U.S. 97, 54 S.Ct. 330,78 L.Ed. 674.
[19] 291 U.S. at 105-106, 54 S.Ct. at 332, 78 L.Ed. at 678.
[20] United States v. Moore (C.A.7, 1991), 936 F.2d 1508, 1523.
[21] See Wade v. United States (C.A.D.C. 1971), 142 U.S. App. D.C. 356, 441 F.2d 1046.
[22] State v. Campbell, supra, at 346.
[23] (2001), 144 Ohio App.3d 69.
[24] Id. at 72.
[25] See Id.
[26] State v. Belfoure, Cuyahoga App. No. 80159, 2002-Ohio-2933; Statev. Smith, Cuyahoga App. No. 79527, 2002-Ohio-2145; State v. Wayt (1992),83 Ohio App.3d 848, 857-858; State v. Sheppard (1955), 100 Ohio App. 345,390, affirmed on other grounds (1956), 165 Ohio St. 293; State v. Cobb, Seneca App. No. 13-2000-07, 2000-Ohio-1712; Logan v. Quillen, (Oct. 27, 1995), Hocking App. No. 94CA26; State v. Mascarella, (June 30, 1995), Tuscarawas App. No. 93 AP 100075; State v. Sexton, (Nov. 24, 1982), Clark App. No. 1689; State v. Ernst, (Oct. 29, 1982), Sandusky App. No. S-82-7.
[27] (1955), 100 Ohio App. 345.
[28] Id. at syllabus, paragraph 5.
[29] (Dec. 20, 2001), Franklin App. No. 01AP-614, cert. granted94 Ohio St.3d 1484.
[30] (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674.
[31] Id. at 688, 104 S.Ct. at 2064, 80 L.Ed.2d at 693.
[32] Id. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693.
[33] Id. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694.
[34] State v. Sanders, 92 Ohio St.3d 245, 273, 2001-Ohio-189,750 N.E.2d 90, 123.
[35] State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus.
[36] Strickland, supra at 694, 104 S.Ct. at 2068,80 L.Ed.2d at 698.
[37] State v. Sanders, supra.