OPINION
{¶ 1} Defendant-appellant Uthman Batin, aka, Anthony Conley, appeals his conviction and sentence from the Stark County Court of Common Pleas on one count of trafficking in cocaine in violation of R.C. 2925.03
(A)(2)(C)(4)(e), and one count of possession of cocaine in violation of R.C. 2925.11 (A)(C)(4)(d), a felony of the second degree. The trafficking offense contained a specification that the offense occurred in the vicinity of a school, thereby enhancing the penalty of the offense to a felony of the first degree.
 STATEMENT OF THE FACTS {¶ 2} On January 16, 2004, Chad Braun, Ed Kirkland, and Brian Johnson from the Adult Parole Authority arrived at the residence of Michael Rogers, located at 431 Euclid Avenue S.W., Massillon, Stark County, Ohio. Rogers was a parolee supervised by the Adult Parole Authority. The parole officers were making a home visit at his residence. The parole officers were dressed in plain clothes, and arrived in Kirkland's personal vehicle, which is unmarked.
 {¶ 3} As they arrived at the residence, Officer Braun observed a white van that he understood belonged to appellant. Officer Braun testified, without objection from trial counsel, that he previously received information that appellant was "dealing drugs and was involved in drug activity." (T. at 122). Appellant and Rogers were observed exiting the residence. The parole officers were apprehensive because they didn't know what to expect inside the residence, so they called the Massillon Police Department for backup prior to exiting the vehicle.
 {¶ 4} The parole officers pulled up across the street from Rogers' residence. Officer Braun got out of the car yelling "Parole". Both appellant and Rogers recognized Parole Officer Braun. Rogers did not say anything, but appellant said "What's going on, Chad?"
 {¶ 5} When Officer Braun told the men to show their hands, Rogers complied, but appellant took off running. Officer Braun pursued appellant along the north side of Rogers' residence, as Officer Kirkland went around the south side of the residence to cut off appellant's path. Officer Braun was approximately 15 to 20 feet behind appellant during the pursuit, and watched appellant pull his hands from his jacket and throw a plastic baggie over the fence. Officer Braun looked over the fence and observed two baggies lying on the ground, containing what appeared to be a hard, white substance.
 {¶ 6} After he threw the baggie, appellant immediately began to slow down, turned around and said "What, What, What, I didn't do anything." Appellant started to walk back in Officer Braun's direction. Officer Kirkland directed appellant to lie down on the ground, and placed him in handcuffs. Officer Braun told Officer Kirkland that he saw appellant throw something over the fence. Officer Braun recovered the baggies from the other side of the fence, which were in a neighbor's yard. The items thrown consisted of two separate baggies, which Officer Braun showed to Officer Kirkland, and then brought the baggies inside Rogers' house. When the police arrived, Officer Braun turned the drugs over to Detective Minarcheck.
 {¶ 7} Prior to arrest, Officer Kirkland questioned appellant in order to determine who owned the van appellant drove to the house. Appellant told Officer Kirkland to tell Mr. Rogers "Thanks for setting him up." Appellant was arrested and searched. He was carrying $432 in cash in one of his pockets.
 {¶ 8} After the police arrived, the parole officers looked around Rogers' house for other signs of behavior indicating drug activity, but did not find any drugs or drug paraphernalia.
 {¶ 9} Thomas Minarcheck, a detective with the Massillon Police Department, arrived at the scene after appellant had been taken to the Massillon Police Station. Detective Minarcheck testified, without objection from trial counsel, that he received information that appellant was involved in "pattern drug sales" prior to January 16, 2004.
 {¶ 10} Detective Minarcheck provided testimony as to the specification in the indictment that the offense took place within 1000 feet of a school. Trial counsel did not object to this testimony, although Detective Minarcheck admitted that he did not personally determine the distances, and did not understand the process used to establish them. Detective Minarcheck relied on City Engineer Jason Haynes, who measured the exact distance on a topographical map.
 {¶ 11} Parole Officer Braun testified that there was a school in the immediate vicinity of Rogers' residence. Officer Braun testified that the school was "approximately 1000 feet" from the Rogers residence.
 {¶ 12} At the conclusion of the State's case in chief, trial counsel did move for a judgment of acquittal pursuant to Crim. R. 29 for the trafficking offense or for the vicinity of a school specification. The two plastic baggies were sent to the Stark County Crime Lab. One baggie contained 22 pieces of crack-cocaine tested at an aggregate weight of 3.56 grams of crack-cocaine. The second baggie contained a large piece of crack, a "pancake," which had not yet been cut into individual unit doses. This pancake tested at 9.89 grams of crack-cocaine. Together the crack-cocaine in the baggies thrown by appellant weighed 13.45 grams. The cash found on appellant was tagged into evidence and submitted to the Stark County Crime Lab. The cash was tested and found to contain residue of cocaine.
 {¶ 13} A jury trial commenced on April 8, 2004 and concluded with the appellant being found guilty of both offenses as charged in the indictment. A sentencing hearing was conducted on April 12, 2004. The court imposed a mandatory maximum sentence of 10 years and a $10,000 mandatory fine for the offense of trafficking in cocaine, and a term of 8 years incarceration, and a $7,500 fine, for the offense of possession of cocaine. The court merged the counts in the indictment for purposes of sentencing, and the fines and prison sentences were ordered to run concurrently with each other. Appellant's operator's license was also suspended for five years. Appellant's trial counsel did not file an affidavit of indigency seeking to waive the mandatory fines.
 {¶ 14} Appellant filed a timely notice of appeal and raises the following two assignments of error for our consideration:
 {¶ 15} "I. The state of ohio failed to prove beyond a reasonable doubt that appellant was guilty of trafficking in cocaine committed within one thousand feet of school premises, and his conviction is against the manifest weight of the evidence.
 {¶ 16} "Appellant was denied his constitutional right to effective assistance of counsel when trial counsel failed to object to the introduction of improper heresay [sic] evidence and other act evidence."
 {¶ 17} In his first assignment of error, appellant argues that his conviction for trafficking in cocaine is against the weight of the evidence. He further argues that the State failed to prove beyond a reasonable doubt that the offense occurred in the vicinity of a school.
 {¶ 18} Our standard of reviewing a claim a verdict was not supported by sufficient evidence is to examine the evidence presented at trial to determine whether the evidence, if believed, would convince the average mind of the accused's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt,State v. Jenks (1991), 61 Ohio St. 3d 259.
 {¶ 19} The Supreme Court has explained the distinction between claims of sufficiency of the evidence and manifest weight. Sufficiency of the evidence is a question for the trial court to determine whether the State has met its burden to produce evidence on each element of the crime charged, sufficient for the matter to be submitted to the jury.
 {¶ 20} Manifest weight of the evidence claims concern the amount of evidence offered in support of one side of the case, and is a jury question. We must determine whether the jury, in interpreting the facts, so lost its way that its verdict results in a manifest miscarriage of justice, State v. Thompkins (1997), 78 Ohio St. 3d 387, citations deleted.
 {¶ 21} Manifest Weight-Trafficking in Cocaine.
 {¶ 22} In the case at bar, the object that appellant attempted to dispose of consisted of two (2) separate baggies. (2T. at 170-71.). The first package contained twenty-two (22) unit doses of crack cocaine with an aggregate weight of 3.56 grams. (Id. at 341). Detective Minarcheck testified that each piece could be sold on the streets for approximately twenty-five dollars. ($25.00). (Id. at 205). The other baggie contained what Detective Minarcheck termed "a pancake on the streets. It is a hard rock. It's not been cut up yet. What you do when you make your crack cocaine, you form this and then when it is done cooking you have to take it and cut it into unit doses." (Id. at 205). This "pancake" weighed 9.89 grams. (Id. at 241). Accordingly the total weight of the material contained within the two baggies was 13.45 grams of crack cocaine. (Id.). Also recovered from the appellant at the time of his arrest was Four Hundred Thirty-two dollars ($432.00) in currency. (Id. at 206-7). The currency tested positive for traces of cocaine. (Id. at 244).
 {¶ 23} Appellant argues there is insufficient evidence to sustain a conviction for drug trafficking. Appellant contends there is insufficient evidence of preparation for shipment or preparation for distribution. R.C. 2925.03(A)(2) states that "[n]o person shall knowingly * * * [p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe the controlled substance is intended for sale or resale by the offender or another."
 {¶ 24} In this case, the jury correctly inferred from the evidence that appellant not only possessed the drugs but that he was also involved in the preparation for shipment or distribution of drugs to facilitate drug trafficking activity. The appellant's possession of a large amount of crack cocaine, both cut and uncut, as well as his possession of a large sum of money permitted the jury to draw the logical inference that he was involved in the distribution of drugs. Likewise, the lack of any cocaine smoking paraphernalia on his person at the time of his arrest suggested that the drugs he possessed were not for personal use. See,State v. Jolly (July 10, 1997), 8th Dist. No. 70482; State v. Gill
(Jan. 8, 1997), 1st Dist. Nos. C-950762, C-950806.
 {¶ 25} Although appellant presented the testimony of his sister that she had given appellant the $432.00 to buy gravel for her driveway to contradict the State's inference that he engaged in trafficking, the jury was free to accept or reject any and all of the evidence offered by the appellant and assess the witness's credibility. Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. State v. Jenks (1991),61 Ohio St. 3d 259, 574 N.E. 2d 492.
 {¶ 26} Accordingly, appellant's first assignment of error based upon manifest weight is overruled. We will address the remainder of appellant's first assignment of error in our disposition of his ineffective assistance of counsel claims.
 II. {¶ 27} In his second assignment of error, appellant argues that he was denied effective assistance of trial counsel. He further argues that the State failed to prove beyond a reasonable doubt that the offense occurred in the vicinity of a school.
 {¶ 28} While it is true that appellant's trial counsel did not object to the testimony concerning the vicinity of the school specification, and further did not make a Crim. R. 29 motion for judgment of acquittal at the end of the State's case in chief or at the end of appellant's case, appellant has alleged in his second assignment of error that he received ineffective assistance of counsel at the trial level due to counsel's failure to object and/or make the necessary motions to preserve the issues for appellate review. Accordingly, we will address the appellant's assignments of error together.
 {¶ 29} A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry in whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. Lockhart v. Fretwell (1993), 506 U.S. 364,113 S.Ct. 838, 122 L.Ed.2d 180; Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989),42 Ohio St.3d 136.
 {¶ 30} In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley, 42 Ohio St. 3d at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. Id.
 {¶ 31} In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. This requires a showing that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Bradley, supra at syllabus paragraph three. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
 {¶ 32} The United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Bradley at 143, quotingStrickland at 697. Accordingly, we will direct our attention to the second prong of the Strickland test.
 {¶ 33} In support of this assignment of error, appellant refers to four incidents that occurred, during the trial, which appellant claims establishes he was denied effective assistance of counsel. Appellant first refers to the testimony of Detective Minarcheck wherein Detective Minarcheck discussed how the city engineer determined the distance from the incident to the schools via a process involving a topographical map, and that he had received information in the past that appellant was involved in drug trafficking. (2T. at 203; 210-211). Appellant also argues that probation officer Chad Braun discussed, without objection by appellant's trial counsel, that Officer Braun had received information in the past that appellant was involved in drug trafficking. (2T 179-80). Appellant further argues that defense counsel failed to object to a question asked by the prosecutor which called for a witness to speculate as to what appellant was thinking. (2T. at 194). Finally, appellant argues defense counsel failed to file an affidavit of indigency pursuant to R.C. 2929.18 (B) (1) asking the court to waive the mandatory fine. We will address each of these arguments separately.
 {¶ 34} Other Acts Evidence.
 {¶ 35} Evid. R. 404(B) states: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." In State v. Broom (1988), 40 Ohio St.3d 277, 533 N.E.2d 682, the Supreme Court held in addition to those reasons listed in the Rule, evidence of other bad acts may be admissible to prove identity. However, because Evid. R. 404(B), and R.C. 2945.59, codify an exception to the common law with respect to evidence of other acts of wrongdoing, they must be construed against admissibility, and the standard for determining admissibility of such evidence is strict, Broom, syllabus by the court, paragraph 1.
 {¶ 36} In State v. Noling, 98 Ohio St.3d 44, 2002-Ohio-7044,781 N.E.2d 88, the Ohio Supreme Court held the admission of evidence is addressed to the broad discretion of the trial court, and a reviewing court shall not disturb evidentiary decisions in the absence of abuse of discretion resulting in material prejudice. The Supreme Court has repeatedly held the term abuse of discretion implies the trial court's attitude is unreasonable, arbitrary, or unconscionable, see, e.g., Statev. Adams (1980), 62 Ohio St.2d 151, 404 N.E.2d 144.
 {¶ 37} Evid. R. 403(A) addresses the exclusion of relevant evidence. This rule provides: "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."
 {¶ 38} Evid.R. 401 defines "relevant evidence" as "* * * evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence"
 {¶ 39} In the case at bar, the evidence that at some unspecified time in the past Detective Minarcheck and probation officer Braun received information from an unidentified source that appellant was involved in drug trafficking was not relevant to any issue in the case. The State does not seriously challenge this assessment on appeal, arguing instead that it was "trial strategy" not to object to the uncharged misconduct hearsay testimony.
 {¶ 40} However a review of the record in the case at bar establishes that there is no reasonable probability that the result of appellant's trial would have been different. As previously discussed, sufficient evidence existed to support appellant's conviction for trafficking in drugs. Specifically, an eyewitness saw appellant throw the bag containing the drugs; the packaging and the weight of the drugs supports a finding that they were not intended for personal use and the appellant's words and actions in response to the probation officers and the police are sufficient evidence upon which the jury could find appellant guilty. Accordingly, we find appellant was not prejudiced by defense counsel's failure to object to this testimony. B. Testimony as to What Appellant May Have Been Thinking.
 {¶ 41} Appellant next argument concerns the following testimony from probation officer Ed Kirkland:
 {¶ 42} "A. He [appellant] made a statement about Michael Rodgers stating — tell Mike I want to thank him for setting me up or something like that.
 {¶ 43} "Q. How [sic] did you take that to mean?
 {¶ 44} "A. I would take that as an officer that Mr. Conley [appellant] was under the assumption that Mike Rodgers called us and maybe knew that he had the drugs on him. That certainly wasn't the case." (2T. at 194).
 {¶ 45} Although arguably improper, we do not find the testimony prejudiced appellant and any error that did occur was harmless error pursuant to Crim.R. 52(A). In reality, the jury was free to draw this conclusion without the testimony elicited by the State. Accordingly, we find appellant was not prejudiced by defense counsel's failure to object to this testimony. C. Establishment of distance.
 {¶ 46} Appellant's first argument addresses the following testimony by Detective Minarcheck concerning the distance between the incident and the schools:
 {¶ 47} "Q. As far as part of your investigation in this case, did you make any attempts to determine the distance from the approximate area where the drugs were recovered and those two schools?
 {¶ 48} "A. Yes.
 {¶ 49} "Q. How did you do that?
 {¶ 50} "A. I have — the city engineer Jason Haynes, they have a — they can measure exact distance with a real in-detail exact process. It's from a topographical map which is like an airplane thing. I don't know how it works.
 {¶ 51} "Q Did you consult the engineer's office to assist you in making that measurement?
 {¶ 52} "A. Yes.
 {¶ 53} "Q. And approximately how far was the location where the drugs were recovered from these two schools?
 {¶ 54} "A. Well, within a thousand feet, couple hundred feet on one and 500 feet on the other. Was well within the parameters set by State law." (2T. at 210-211).
 {¶ 55} Appellant maintains, in essence, that Detective Minarcheck should not have been permitted to testify concerning the distance between the school and where the incident occurred based upon the city engineer's findings.
 {¶ 56} Evid.R. 701 addresses opinion testimony by lay witnesses and provides as follows: "If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue."
 {¶ 57} In Lee v. Baldwin (1987), 35 Ohio App.3d 47, 49, the First District Court of Appeals explained that lay testimony must be, "(1) `rationally based on the perception of the witness,' i.e., the witness must have firsthand knowledge of the subject of his testimony and the opinion must be one that a rational person would form on the basis of the observed facts; and (2) `helpful,' i.e., it must aid the trier of fact in understanding the testimony of the witness or in determining a fact in issue."
 {¶ 58} Detective Minarcheck did not perform any measurement testing and was unable to describe how the measurements were made. (2T. at 219). He relied upon the city engineer's estimate of the distance. (Id.). The map the city engineer used to make the measurements was not admitted into evidence, nor did anyone from the engineer's office testify at appellant's trial. The sole map admitted into evidence does not have a distance scale, and there was no testimony presented to establish that the map was drawn to scale.
 {¶ 59} The testimony of Detective Minarcheck as to what the city engineer told him was inadmissible hearsay. See Evid. R. 801(C); Statev. Thomas, 9th Dist. No. 21393, 2003-Ohio-4270 at ¶ 8. There was no testimony concerning the process or system used by the engineer to produce the distance measurement and that the system or process used by the engineer produces an accurate result. See, Evid. R. 901(B) (9). There is absolutely no reasonable basis for defense counsel's failure to object to admission of this portion of Detective Minarcheck's testimony.
 {¶ 60} Having determined that the testimony was improper we must now determine whether appellant was prejudiced by trial counsel's failure to object to this testimony.
 {¶ 61} The Strickland case also gives further guidance to courts in determining whether a criminal defendant has been prejudiced by counsel's ineffectiveness:
 {¶ 62} "* * * [A] court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors of the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors." Id. at 695-696, 104 S.Ct. at 2069.
 {¶ 63} In the case at bar, the only other evidence produced by the State concerning the distance of the incident from the boundaries of the schools, came from probation officer Chad Braun. Officer Braun testified that he was aware that there was a school in the area within "approximately a thousand feet." (2T. at 177). He could not recall the name of the school, or whether it was visible from the porch of Mr. Rodgers' home. (Id.). When asked how he knew the school was within a thousand feet, Officer Braun testified "I said approximately a thousand feet." (Id. at 179). Officer Braun was not personally involved in any measuring of the distance between the area where the incident occurred and the two schools. (Id. at 181).
 {¶ 64} We find that probation officer Braun's testimony that the incident occurred within "approximately a thousand feet" of the schools to be insufficient to establish beyond a reasonable doubt that the drug offense occurred within 1,000 feet of the boundaries of a school premises. State v. Goins (Sept. 29, 2000), 5th Dist. No. CA99-08; Statev. Olvera (Oct. 15, 1999), 6th Dist. No. WM-98-022, WM-98-023.
 {¶ 65} We are persuaded that the outcome of this case might have been different had portions of Detective Minarcheck's testimony been objected to and properly deleted at trial. In light of the above, our confidence in the outcome is undermined such that we cannot say that defendant received effective assistance of counsel. Strickland, supra, at 694,104 S.Ct. at 2068, 80 L.Ed.2d at 697-698.
 {¶ 66} The practical result is not to invalidate appellant's conviction for trafficking, but, rather to vacate and remand for a new jury trial the "school boundary" specification and mandatory sentence.Blakely v. Washington (June 24, 2004), 124 S.Ct. 2531, 159 L.Ed.2d 403; 72 U.S.L.W. 4546. The jury found appellant guilty of trafficking in cocaine as a separate verdict from its finding concerning the school specification.
 {¶ 67} Accordingly, we vacate appellant's sentence on the "school boundary" specification and remand the matter to the trial court for a new trial on that issue. Blakely v. Washington (June 24, 2004),124 S.Ct. 2531, 159 L.Ed.2d 403; 72 U.S.L.W. 4546. In light of our disposition of appellant's case, we find any prejudice to appellant from trial counsel's failure to file an affidavit of indigency to be moot as appellant can file such affidavit prior to re-sentencing.
 {¶ 68} For the foregoing reasons, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed in part, reversed in part, and remanded.
Gwin, P.J., Wise, J., and Boggins, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed in part, reversed in part, and remanded. Costs to appellant.