[Cite as *State v. Heald*, 2018-Ohio-1789.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | Case No. 17CA50 |
| | : | |
| PAUL EDWARD HEALD | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Richland County Court
                                  of Common Pleas, Case No. 2016 CR
                                  0509 R


JUDGMENT:                         AFFIRMED


DATE OF JUDGMENT ENTRY:           May 3, 2018


APPEARANCES:

For Plaintiff-Appellee:                      For Defendant-Appellant:

GARY D. BISHOP                               RANDALL E. FRY
RICHLAND COUNTY PROSECUTOR                   10 West Newlon Place
                                             Mansfield, OH 44902
JOSEPH C. SNYDER
38 South Park Street
Mansfield, OH 44902

*Delaney, J.*

{¶1} Defendant-Appellant Paul Edward Heald appeals his conviction and sentence on May 4, 2017 in the Richland County Court of Common Pleas.

**FACTS AND PROCEDURAL HISTORY**

{¶2} On November 15, 2015, deputies from the Richland County Sheriff's Department were called to a residence located in Mansfield, Ohio to investigate a crime involving a gun and Defendant-Appellant, Paul Edward Heald. J.K., the owner of the residence, gave the deputies consent to search the home for the gun.

{¶3} When the deputies arrived at the residence and knocked on the door, Heald answered the door and was arrested. The deputies searched Heald and found $600.36 in cash on his person. The deputies commenced a search of the home. Deputy Shoemaker and Deputy Ganzhorn discovered a green leafy substance and a pipe in a dresser drawer of a bedroom. In the same the dresser drawer, Deputy Ganzhorn found medical papers and court papers with Heald's name on it. Heald's last valid driver's license stated his address was in Painesville, Ohio. Deputy Shoemaker searched the outside of the residence and observed a grill against the back of the house. Deputy Shoemaker opened the grill to look for the reported gun. Inside the grill, Deputy Shoemaker found a brown plastic bag with a clear plastic bag inside closed with an orange twisty tie. Inside the bag were containers containing a green leafy substance, a wrapped brownie, and five cylindrical objects that, to Deputy Shoemaker, looked like sidewalk chalk. The plastic bag and the contents were secured as evidence and sent to the Ohio Bureau of Criminal Investigation for analysis.

{¶4} BCI analyzed the contents of the brown plastic bag. It was determined the five cylindrical objects that looked like sidewalk chalk were made of heroin, acetylfentanyl, and fentanyl and weighed a total of 297.51 grams. It was estimated the street value of 297.51 grams of heroin and fentanyl was $29,700.00.

{¶5} In December 2015, Deputy Ganzhorn was granted a search warrant to obtain a DNA swab from Heald.

{¶6} After his arrest, Heald was held in jail. During a recorded phone conversation with J.K. while he was in jail, Heald told J.K. the police only found the marijuana.

{¶7} The Mansfield Police Department Crime Lab obtained a DNA sample from the plastic bag that contained the heroin and fentanyl. The DNA Analysis Report showed the DNA swab from Heald matched the major DNA profile on the plastic bag containing the heroin and fentanyl. The Crime Lab determined within a reasonable degree of scientific certainty that Heald was the source of the major DNA profile on the plastic bag. It was unknown, however, when Heald handled the plastic bag or how long his DNA was on the plastic bag.

{¶8} On August 10, 2016, the Richland County Grand Jury indicted Heald on two counts: Count One, Possession of Heroin, a first-degree felony in violation of R.C. 2925.11(A) and (C)(6)(f); and Count Two, Trafficking in Heroin, a first-degree felony in violation of R.C. 2925.03(A)(2) and (C)(6)(g). Heald entered a plea of not guilty.

{¶9} The matter came before a jury on May 1-2, 2017. At the conclusion of the State's case, counsel for Heald moved for judgments of acquittal pursuant to Crim.R. 29(A). The trial court overruled the motion.

{¶10} The jury found Heald guilty on both counts. On May 3, 2017, the trial court merged the counts for sentencing purposes. The trial court sentenced Heald to a mandatory term of 11 years in prison to run consecutive to any other sentence he was currently serving, five years mandatory post release control, imposed a $10,000.00 mandatory fine, and suspended his driver's license for 60 months. The sentencing entry was filed on May 4, 2017.

{¶11} It is from this sentencing entry Heald now appeals.

## ASSIGNMENT OF ERROR

{¶12} Heald raises one Assignment of Error:

{¶13} "THE TRIAL COURT ERRED IN OVERRULING THE APPELLANT'S MOTION FOR ACQUITTAL PURSUANT TO OHIO CRIMINAL RULE PROCEDURE 29 A."

## ANALYSIS

{¶14} Heald argues in his sole Assignment of Error that the trial court erred when it denied his Crim.R. 29(A) motion for acquittal for count one, possession of heroin, and count two, trafficking in heroin.

{¶15} Crim.R. 29 governs motion for acquittal. Subsection (A) states the following:

> The court on motion of a defendant or on its own motion, after the evidence
> on either side is closed, shall order the entry of a judgment of acquittal of
> one or more offenses charged in the indictment, information, or complaint,
> if the evidence is insufficient to sustain a conviction of such offense or
> offenses. The court may not reserve ruling on a motion for judgment of
> acquittal made at the close of the state's case.

{¶16} The standard to be employed by a trial court in determining a Crim.R. 29 motion is set out in *State v. Bridgeman,* 55 Ohio St.2d 261, 381 N.E.2d 184 (1978), syllabus: "Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." *State v. Capps*, 5th Dist. Coshocton No. 2017CA0010, 2018-Ohio-1132, ¶ 16.

{¶17} "A motion for acquittal under Crim.R. 29(A) is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence." *State v. Spaulding*, 151 Ohio St.3d 378, 2016–Ohio–8126, 89 N.E.3d 554, ¶ 164, reconsideration denied, 147 Ohio St.3d 1480, 2016–Ohio–8492, 66 N.E.3d 766, citing *State v. Tenace,* 109 Ohio St.3d 255, 2006–Ohio–2417, 847 N.E.2d 386, ¶ 37. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*, citing *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶18} Heald was charged with possession of heroin, in violation of R.C. 2925.11(A) and (C)(6)(f). R.C. 2925.11(A), states in relevant part: "No person shall knowingly obtain, possess, or use [heroin]." As the amount of heroin equaled or exceeded two hundred and fifty grams, possession of heroin was a felony of the first degree. *See* R.C. 2925.11(C)(6)(f).

{¶19} Heald argued at trial that the State failed to establish he knowingly possessed heroin. Ohio Revised Code Section 2901.22(B) provides the definition of how and when a person acts knowingly:

A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

{¶20} "Whether a person acts knowingly can only be determined, absent a defendant's admission, from all the surrounding facts and circumstances, including the doing of the act itself." *State v. Pearson*, 5th Dist. Stark No. 2017CA00013, 2017-Ohio-8396, ¶¶ 18-19 quoting *State v. Huff* (2001), 145 Ohio App.3d 555, 563, 763 N.E.2d 695. (Footnote omitted.) Thus, "[t]he test for whether a defendant acted knowingly is a subjective one, but it is decided on objective criteria." *State v. McDaniel* (May 1, 1998), Montgomery App. No. 16221, 1998 WL 214606 *7, citing *State v. Elliott* (1995), 104 Ohio App.3d 812, 663 N.E.2d 412.

{¶21} R.C. 2925.01(K) defines possession as follows: " 'Possess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." Possession may be actual or constructive. *State v. Butler*, 42 Ohio St.3d 174, 176, 538 N.E.2d 98(1989); *State v. Haynes*, 25 Ohio St.2d 264, 267 N.E.2d 787(1971); *State v. Hankerson*, 70 Ohio St.2d 87, 434 N.E.2d 1362(1982), syllabus. To establish constructive possession, the evidence must prove that

the defendant was able to exercise dominion and control over the contraband. *State v. Wolery*, 46 Ohio St.2d 316, 332, 348 N.E.2d 351(1976). Dominion and control may be proven by circumstantial evidence alone. *State v. Trembly*, 137 Ohio App.3d 134, 738 N.E.2d 93(8th Dist. 2000). Circumstantial evidence that the defendant was located in very close proximity to the contraband may show constructive possession. *State v. Butler*, supra; *State v. Barr*, 86 Ohio App.3d 227, 235, 620 N.E.2d 242, 247-248(8th Dist. 1993); *State v. Morales*, 5th Dist. Licking No. 2004 CA 68, 2005-Ohio-4714, ¶50; *State v. Moses,* 5th Dist. Stark No. 2003CA00384, 2004-Ohio-4943,¶9. Ownership of the contraband need not be established in order to find constructive possession. *State v. Smith*, 9th Dist. Summit No. 20885, 2002-Ohio-3034, ¶13, *citing State v. Mann*, 93 Ohio App.3d 301, 308, 638 N.E.2d 585(8th Dist. 1993).

{¶22} Heald contends the only evidence presented at trial by the State to establish he knowingly possessed heroin was the discovery of a plastic bag containing heroin in a grill located at J.K.'s home. Heald's DNA was found on the plastic bag containing the heroin. It was unknown, however, when Heald handled the plastic bag or how long Heald's DNA was on the plastic bag.

{¶23} The trial court found, reviewing the facts in a light most favorable to the State, that the State established the elements of possession of heroin beyond a reasonable doubt. Evidence was presented that Heald was at J.K.'s home when the heroin was found and his belongings were found in the home. The deputies found his name on medical and court papers located in a dresser drawer inside the bedroom. During a recorded phone conversation with J.K. while he was in jail, Heald told J.K. the police only found the marijuana. The plastic bag containing the heroin was tested against

Heald's DNA sample and the Mansfield Police Department Crime Lab determined within a reasonable degree of scientific certainty that Heald was the source of the major DNA profile found on the plastic bag containing the heroin.

{¶24} Our review of the record in a light most favorable to the State supports the trial court's conclusion that a rational trier of fact could have found beyond a reasonable doubt that Heald exercised dominion and control over the heroin.

{¶25} Heald next argues the trial court erred when it denied his motion for acquittal on count two, trafficking in heroin. Trafficking in heroin, in violation of R.C. 2925.03(A)(2) and (C)(6)(f) states in pertinent part: "No person shall knowingly * * * [p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute [heroin], when the offender knows or has reasonable cause to believe that the [heroin] is intended for sale or resale by offender or another person."

{¶26} Heald contends the State failed to establish the elements of trafficking in heroin. He states the State failed to present evidence, other than the approximate street value of the 297.51 grams of heroin found in the grill, that Heald was allegedly preparing the heroin for shipment, transportation, delivery, or distribution.

{¶27} In *State v. Batin,* 5th Dist. Stark No. 2004-CA-00128, 2005-Ohio-36, this Court held that "[t]he appellant's possession of a large amount of crack cocaine [13.45 grams], both cut and uncut, as well as his possession of a large sum of money [$432] permitted the jury to draw the logical inference that he was involved in the distribution of drugs. Likewise, the lack of any cocaine smoking paraphernalia on his person at the time of his arrest suggested that the drugs he possessed were not for personal use." *Id.* at ¶ 24.

{¶28} The Eighth District Court of Appeals relied on *Batin* in a case where the appellant was charged with drug trafficking. In *State v. Young*, the appellant was observed by police officers in an area of high drug activity and seen walking away from police officers patrolling the area. 8th Dist. Cuyahoga No. 92744, 2010-Ohio-3402, ¶ 2. An officer saw the appellant remove something from his mouth, place it on a porch, and walk away. The officers stopped the appellant and it was determined the item removed from the appellant's mouth was a plastic bag containing 12.29 grams of crack cocaine. *Id.* at ¶ 3. The appellant was charged with drug trafficking. Officers testified at trial the street value of the drugs found was between $1,000 to $1,200, which was more than one would normally have for personal consumption. *Id.* at ¶ 17.

{¶29} The Eighth District affirmed that the appellant's conviction for drug trafficking was supported by the sufficiency of the evidence. The court noted that no drug paraphernalia was found on the appellant, undercutting his argument that the drugs were for personal use. *Id.* at ¶ 19. A police officer testified the quantity of crack recovered was not typical for personal use. *Id.* The court referred to several cases in which it held that police officers may testify to the nature and amount of drugs and its significance in drug trafficking. (Citations omitted.) *Id.*

{¶30} In the present case, when the deputies searched J.K.'s home, they found a green leafy substance and a pipe in the dresser drawer of the bedroom. There was no testimony that drug paraphernalia related to heroin usage was found at the home or on Heald's person when he was arrested. At the time of his arrest, Heald was found to be carrying $600.36 in cash. Detective Steve Blust testified at the trial that drug users typically buy one-half to one gram of heroin. The amount of heroin found in the grill was

297.51 grams. The estimated street value of 297.51 grams of heroin and fentanyl found in the plastic bag was $29,700.00. (T. 140).

{¶31} We rely upon our decision in *Batin* to hold that a rational trier of fact could have found the essential elements of trafficking in heroin were proven beyond a reasonable doubt. A jury could infer the large amount of heroin, the street value of 297.51 grams of heroin, the large sum of money found on Heald's person, and the lack of drug paraphernalia related to heroin usage suggested that the heroin was not for Heald's personal use.

{¶32} Heald's sole Assignment of Error is overruled.

## CONCLUSION

{¶33} The judgment of the Richland County Court of Common Pleas is affirmed.

By: Delaney, J.,

Gwin, P.J. and

E. Wise, J., concur.