DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Darrell Jones ("Jones"), appeals from the decision of the Summit County Court of Common Pleas. This Court affirms in part and reverses in part.
 I. {¶ 2} In November of 2005, the Akron Police Department was conducting surveillance for possible drug trafficking at 400 Beechwood Drive, in Akron, Ohio. As a result of this investigation, officers executed a search warrant on the Beechwood residence. Upon execution of the search warrant, officers located Jones at the scene. Jones was subsequently indicted on several counts arising from execution of the warrant.
 {¶ 3} On July 24, 2006, the Akron Police Department was conducting surveillance for possible drug trafficking at 386 East Voris Street, in Akron, Ohio. Officers observed several people enter the home and leave quickly. Officers stopped these individuals and discovered heroin and paraphernalia associated with the use of heroin. The individuals informed the officers *Page 2 
that they had purchased the drugs from the Voris home. Based upon their investigation, officers executed a search of the Voris home. Upon entering the home, officers found Jones and another individual. Officers observed firearms in plain view, and discovered a bag of approximately 65 doses of heroin on the living room floor, two packages of heroin and one package of crack cocaine, along with drug paraphernalia, on and in a pool table. They also found a bullet proof vest, a digital scale, and sandwich baggies. Officers further found a plastic bag of sleeping capsules, a flour sifter, lottery tickets, a small spoon, a grinder, and a syringe.
 {¶ 4} On August 3, 2006, Jones was indicted on one count of possession of cocaine, in violation of R.C. 2925.11(A), two counts of possession of heroin, in violation of R.C. 2925.11(A), one count of trafficking in heroin in the vicinity of a juvenile, in violation of R.C. 2925.03(A)(2), one count of illegal manufacture of drugs in the vicinity of a juvenile, in violation of R.C. 2925.04(A), two counts of having weapons while under disability, in violation of R.C. 2923.13(A)(1)/(A)(2)/(A)(3), and one count of possessing criminal tools, in violation of R.C. 2923.24. On October 13, 2006, Jones pled not guilty to the charges in the indictment, and on August 6, 2007, the case proceeded to a jury trial on both the 2006 and 2005 indictments. However, Jones' appeal relates solely to the 2006 indictment, and therefore we will restrict our review of the instant case to the eight counts in that indictment.
 {¶ 5} After the State rested its case, the trial court granted Jones' Crim. R. 29 motion on the illegal manufacture of drugs charge. According to the trial court's journal entry, with regard to the trafficking in heroin charge, the trial court dismissed the enhancement specification and amended the count to a second degree felony. The jury found Jones guilty on the remaining charges in the indictment and the trial court sentenced him to nine and a half years of incarceration. Jones timely appealed from his convictions and sentencing, raising three *Page 3 
assignments of error for our review. We have rearranged Jones' assigned errors for ease of review.
 II. ASSIGNMENT OF ERROR I "THE TRIAL COURT'S DECISION FINDING [JONES] GUILTY BEYOND REASONABLE DOUBT IS NOT SUPPORTED BY SUFFICIENT EVIDENCE AND IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 6} In his first assignment of error, Jones contends that the trial court's decision finding him guilty beyond a reasonable doubt is not supported by sufficient evidence and is against the manifest weight of the evidence. We do not agree.
 {¶ 7} Crim. R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A trial court may not grant an acquittal by authority of Crim. R. 29(A) if the record demonstrates "that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." State v. Wolfe (1988), 51 Ohio App.3d 215, 216. In making this determination, all evidence must be construed in a light most favorable to the prosecution. Id.
 {¶ 8} "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at *1, citing State v. Thompkins (1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring). Further,
 "[b]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at *2. *Page 4 
 {¶ 9} Therefore, we will address Jones' claim that his convictions were against the manifest weight of the evidence first, as it is dispositive of his claim of insufficiency.
 {¶ 10} A determination of whether a conviction is against the manifest weight of the evidence does not permit this Court to view the evidence in the light most favorable to the State to determine whether the State has met its burden of persuasion. State v. Love, 9th Dist. No. 21654,2004-Ohio-1422, at ¶ 11. Rather,
 "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
 {¶ 11} This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 {¶ 12} Jones was convicted of possession of cocaine, in violation of R.C. 2925.11(A), possession of heroin, in violation of R.C. 2925.11(A), trafficking in heroin, in violation of R.C. 2925.03(A)(2), having weapons under disability, in violation of R.C. 2923.13(A)(1)/(A)(2)/(A)(3), and possessing criminal tools, in violation of R.C. 2923.24.
 {¶ 13} With regard to the possession of cocaine, possession of heroin, and possession of criminal tools counts, Jones contends on appeal that the evidence did not show that he knowingly possessed these substances and items.
 {¶ 14} Pursuant to R.C. 2925.11(A), "[n]o person shall knowingly obtain, possess, or use a controlled substance." R.C. 2901.22(B) defines "knowingly" as follows:
 "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." *Page 5 
 {¶ 15} Possession is defined as
 "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K).
 {¶ 16} R.C. 2901.21(D)(1) sets forth the requirements for criminal culpability and provides: "Possession is a voluntary act if the possessor knowingly procured or received the thing possessed, or was aware of the possessor's control of the thing possessed for a sufficient time to have ended possession."
 {¶ 17} "Possession may be actual or constructive." State v. Kobi
(1997), 122 Ohio App.3d 160, 174. Constructive possession has been defined as "knowingly [exercising] dominion and control over [the drugs], even though [they] may not be within his immediate physical possession." State v. Hankerson (1982), 70 Ohio St.2d 87, syllabus. See, also, State v. Wolery (1976), 46 Ohio St.2d 316, 329. Furthermore, ownership need not be proven to establish constructive possession.State v. Mann (1993), 93 Ohio App.3d 301, 308. Circumstantial evidence is sufficient to support the elements of constructive possession. SeeState v. Jenks (1991), 61 Ohio St.3d 259, 272-73.
 {¶ 18} The State called Akron Police Sergeant Ronald Black. Black testified that around 1:00 p.m., he was dispatched to the Voris home. Upon arrival, he found two men and a woman sitting on the front porch. He stated that Jones was one of the men. The individuals informed him that they were visiting someone at the home, but that person was not there. Black testified that he knocked on the front door, but no one answered. He asked Jones and the other individuals to move along. After leaving the Voris home, Black testified that he received another call about the location. He drove by the home and did not see anything out of the *Page 6 
ordinary. However, he testified that it was suspicious that he received two calls about the home in one day and contacted the street narcotics division.
 {¶ 19} The jury heard testimony from Akron Police Officer Michael Schmidt. Schmidt testified that while working undercover he conducted surveillance on a home at 386 East Voris Street. He stated that in a short period of time he observed a large amount of short-term traffic, which, he indicated, was consistent with drug trafficking. Due to these observations, Schmidt called uniformed police officers to conduct stops of the people coming and going from the Voris Street home. He testified that arrests were made for possession of heroin. Schmidt testified that he then obtained a search warrant for the residence. Schmidt testified that Jones was in the home when the search warrant was executed, and he identified Jones in court. Schmidt testified that Jones informed him that he lived at 386 Voris Street. Schmidt testified that he located shoes and clothing that appeared to belong to Jones. He explained that the shoes were size seven and a half and that this was consistent with Jones' shoe size. Schmidt testified that he learned that Jones was under disability from possessing a firearm because he was under an indictment for possession of drugs.
 {¶ 20} On cross examination, Schmidt testified that he could not say for sure that Jones told him he lived at the Voris address or if he got the information from the arrest form. On redirect, Schmidt testified that when he filled out the arrest form, he would have used information that he obtained from Jones. The arrest form listed Jones' address as 386 Voris St. On recross examination, Schmidt stated that he could not recall if he put the address on the form because Jones told him that he lived there or if he put it on the form because that is where officers found Jones. *Page 7 
 {¶ 21} The State next called Akron Police Officer Donny Williams. Williams testified that on July 24, 2006, he was in a marked police unit making investigative stops of the short-term traffic leaving the Voris home. He stated that he made several stops and recovered drugs and drug paraphernalia. Williams explained that when officers approached the home, he saw a tall, white male come to the back door. When the male observed the officers, he ran inside the house. Once inside, Williams located the tall male, Jeremy Kintyntt, and Jones in the living room area. Williams testified that he immediately noticed two handguns on the top of a pool table. He also found a bullet proof vest by the pool table. He testified that this was significant because "[b]eing a drug house and, you know, drugs and guns and weapons go together, many times people participate in those types of activities want to protect themselves by wearing a bullet proof vest[.]"
 {¶ 22} Along with the loaded guns on the pool table, Williams testified that he observed drugs and drug paraphernalia. Williams further testified that officers found a digital scale inside a closet. "Digital scales are used to weigh the drugs for packaging for sale." Inside the pool table, officers located plastic sandwich bags, which are "used to package the drugs and heroin, crack cocaine." He further testified that officers located ammunition, some very small plastic bags, which "in drug trafficking they are used to package drugs in, usually heroin." Inside a box in the pool table, officers found 100 doses of heroin, packaged inside of lottery ticket folds. According to Williams, that many doses of heroin were not for personal use. He further testified that officers found 50.3 grams of heroin in the same box inside the pool table. He explained that in his training and experience that this amount of heroin was not for personal use. Further, inside this box, officers located 43.1 grams of crack cocaine. *Page 8 
 {¶ 23} Williams also testified that officers located sleep aid capsules throughout the room, which, according to Williams are often used to "bulk up the heroin[.]" Finally, Williams testified that officers located a small spoon, typically used for repackaging heroin, a second digital scale, which was coated with residue, a syringe on the kitchen counter, and a small pit bull puppy on the second floor. Williams stated that the weapons were determined to be operable and the substances tested positive for drugs.
 {¶ 24} Next, the jury heard the testimony of Akron Police Detective Alan Jones. Detective Jones stated that he entered the Voris home after he had been involved in many stops referencing the short-term traffic. He testified that he knocked on the back door of the home and noted that a tall, white male came to the door, then ran away. Officers then forced open the door. Detective Jones stated that Jones was "laying on the floor behind the TV." He further testified that the second individual was Jeremy Kintyntt, and officers found a plastic bag at Kintyntt's feet. Detective Jones stated that he located $357 in currency and two cell phones on top of the TV that Jones informed him were his. Detective Jones stated that as a whole, the evidence indicated drug trafficking and that Jones was "attempting to hide" from officers.
 {¶ 25} The State called Detective Ted Male of the Akron Police Department. Male stated that he located a receipt for the purchase of a pit bull puppy at Jones' feet. The receipt indicated that the dog had been sold to Jones on July 9, 2006, and it contained Jones' signature. Male stated that the dog appeared to have free reign of the second floor and it appeared that the dog "had been there a while."
 {¶ 26} Lastly, the jury heard from Jeremy Kintyntt. Kintyntt testified that he did not live at the Voris home and admitted that he was addicted to drugs. He testified that on July 24, 2006, he went to the Voris home to purchase drugs, and that he had purchased drugs there 25 to 30 *Page 9 
times over the course of the month. He stated that either someone by the name of "Yo" or "DJ." would be there. Kintyntt explained that Yo was a short, heavyset individual. Kintyntt identified Jones in court as the individual he knew as DJ. He testified that he had purchased drugs from Jones ten to fifteen times and that the drugs were packaged in lottery folds.
 {¶ 27} Kintyntt stated that after he and Jones spoke with an officer on the front porch of the Voris home, he went inside with Jones to play videogames. Kintyntt stated that he put on a movie and Jones lay down to take a nap. Kintyntt then heard a commotion, went to investigate, and saw the police at the back door. He ran back to the living room and told Jones to get up. "He throws the money on top of the TV, he lays down behind the TV. I was getting ready to go for the door, but they had M 16s, so I laid down and was arrested and they searched me." Kintyntt stated that he did not recall there being a plastic bag containing 65 doses of heroin at his feet and that he had never purchased that much at one time.
 {¶ 28} Kintyntt stated that when at the Voris home, he was only allowed in the kitchen and living room. He testified that he never went into the room with the pool table, although he could see the room from the living room. He stated that only Yo, DJ. and a man named "Juan" were allowed in that room. Kintyntt testified that he did not know who lived at the Voris home, and that Yo and Jones owned four pit bulls between them. Finally, Kintyntt testified that after he was arrested and placed in a police vehicle, Jones told him to remember to say the name "Douglas Fresh Kim" and informed him that was who owned the Voris home.
 {¶ 29} On cross examination, Kintyntt testified that he had been charged with possession of the 65 bundles of heroin and that he was testifying in consideration of that case. He explained that his bond was lowered after he agreed to testify. *Page 10 
 {¶ 30} Upon review of the evidence, we do not find that the jury clearly lost its way when it convicted Jones of possession of heroin and cocaine. Initially, we note the testimony that Jones was found behind a TV and Kintyntt's testimony that Jones was attempting to hide from police. It is well established that evidence of flight is admissible evidence of a "consciousness of guilt." State v. Brady, 9th Dist. No. 22034, 2005-Ohio-593, at ¶ 9, quoting State v. Taylor (1997),78 Ohio St.3d 15, 27. Moreover, flight, concealment, and resisting arrest are all evidence of a consciousness of guilt. State v. Harris, 9th Dist. No. 22466, 2005-Ohio-4935, at ¶ 17, citing State v. Williams (1997),79 Ohio St.3d 1, 11.
 {¶ 31} The jury could find circumstantial evidence that Jones constructively possessed the drugs and criminal tools. Kintyntt testified that although he was not allowed in the room with the pool table, where the cocaine, heroin, and drug paraphernalia were located, Jones was among the three people who had access to it. He further testified that he had purchased drugs from Jones on at least ten occasions. We note that the evidence tends to show that Jones lived at the Voris address; however, the evidence shows that Jones' possession was not based solely on mere occupation of the residence. Rather, the circumstantial evidence and Kintyntt's testimony show that Jones had control over the cocaine, heroin, and criminal tools.
 {¶ 32} Jones further argues that his conviction for having a weapon under disability was against the manifest weight of the evidence. Pursuant to R.C. 2923.13(A)(3), unless relieved of the disability, "no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if * * * [t]he person is under indictment for or has been convicted of any offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse[.]" At trial, Jones stipulated that the guns were operable. Further, the evidence clearly showed that Jones was under indictment for drug possession and trafficking with regard to the *Page 11 
2005 investigation of the Beechwood home. Again, Jones contends that the evidence did not show that he had possession of the guns. The loaded guns were located on the pool table along with the drugs and criminal tools. As we have explained above, the jury's verdict that Jones constructively possessed these items was not against the manifest weight of the evidence.
 {¶ 33} Finally, Jones contends that his conviction for trafficking in heroin was against the manifest weight of the evidence. Pursuant to R.C. 2925.03(A)(2), "[n]o person shall knowingly * * * [p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person." Officers testified that they located lottery tickets, two digital scales, a grinder, a flour sifter, and plastic sandwich bags in the home. Officers testified that these items were used to prepare and package drugs for sale. Further, officers found one large amount of heroin along with several doses of heroin, which were packaged in lottery folds. Officers testified that the people they stopped after exiting the house had purchased heroin packaged in lottery folds. Finally, Kintyntt testified that Jones was one of three people allowed in the room with the pool table, where these items were found. Therefore, the jury did not clearly lose its way when it convicted Jones of trafficking in heroin.
 {¶ 34} Accordingly, Jones' first assignment of error is overruled.
 ASSIGNMENT OF ERROR III
"THE TRIAL COURT'S SENTENCE WAS CONTRARY TO LAW."
 {¶ 35} In his third assignment of error, Jones contends that the trial court's sentence was contrary to law. We agree. *Page 12 
 {¶ 36} Jones raises several issues with regard to his sentencing. Specifically, Jones states that the trial court neglected to inform him that he may be subject to post-release control. The State concedes that the trial court did not inform him of the "requirements and ramifications of post-release control as they pertain to his case." Upon review of the record, we agree.
 {¶ 37} The Ohio Supreme Court has explained that a trial court "is required to notify the offender at the sentencing hearing about postrelease control and is further required to incorporate that notice into its journal entry imposing sentence." State v. Jordan,104 Ohio St.3d 21, 2004-Ohio-6085, at paragraph one of the syllabus. See, also,State v. Simpkins, 117 Ohio St.3d 420, 2008-Ohio-1197, at syllabus. The Court further held that "[w]hen a trial court fails to notify an offender about postrelease control at the sentencing hearing but incorporates that notice into its journal entry imposing sentence, it fails to comply with the mandatory provisions of R.C. 2929.19(B)(3)(c) and (d), and, therefore, the sentence must be vacated and the matter remanded to the trial court for resentencing." Jordan, supra, at paragraph two of the syllabus. As such, we must remand to the trial court for resentencing. Upon resentencing, the trial court cannot simply advise Jones of post-release control and "automatically reimpose the original sentence. Rather, the effect of vacating the trial court's original sentence is to place the parties in the same place as if there had been no sentence." State v. Bezak, 114 Ohio St.3d 94,2007-Ohio-3250, at ¶ 13.
 {¶ 38} Jones is "entitled to a de novo sentencing hearing pursuant toJordan" Id. at ¶ 6, citing Jordan, supra. We note that Jones also argues that the trial court erred in sentencing him on allied offenses of similar import. Specifically, he states he "cannot be convicted and sentenced for all three crimes. The Trial Court must choose one crime for which to punish Jones and dismiss the convictions for the others as a matter of law." Based upon our decision that the trial court failed to inform Jones of his post-release control obligations, we decline to reach this *Page 13 
portion of his assignment of error. Accordingly, Jones' third assignment of error is sustained, insofar as he contends that he was not informed of post-release control, and the cause remanded for proceedings consistent with this opinion.
 ASSIGNMENT OF ERROR II "THE TRIAL COURT ERRED IN FINDING [JONES] GUILTY BEYOND A REASONABLE DOUBT WHEN [JONES'] CONVICTIONS WERE BARRED BY THE ALLIED OFFENSE STATUTE."
 {¶ 39} In his second assignment of error, Jones contends that the trial court erred in finding him guilty beyond a reasonable doubt when convictions were barred by the allied offense statute.
 {¶ 40} Our disposition of Jones' third assignment of error, vacating Jones' sentencing and remanding for a de novo sentencing hearing, renders his second assignment of error moot. Consequently, we need not address it.
 III. {¶ 41} Jones' first assignment of error is overruled. His third assignment of error is sustained. His second assignment of error is moot. The judgment of the Summit County Court of Common Pleas is affirmed in part, reversed in part, and the cause remanded for proceedings consistent with this opinion.
Judgment affirmed in part, reversed in part, and cause remanded.
 The Court finds that there were reasonable grounds for this appeal. *Page 15 
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed equally to both parties.
 CARR, P. J. WHITMORE, J. CONCUR *Page 1